VALERIANO SUAREZ, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ROSA GONZALEZ AND CANDIDO GONZALEZ, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6141–73, 6687–73.   Filed September 6, 1977.

*Michael M. Ushijima,* for the petitioner in docket No. 6141–73.

*Milford Ardell,* for the petitioners in docket No. 6687–73.

*Paul G. Topolka,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined the following deficiencies in the petitioners' Federal income taxes:

| Petitioner | Year | Deficiency |
|---|---|---|
| Valeriano Suarez...................................... | 1968 | $1,183.00 |
| | 1969 | 3,250.00 |
| | 1970 | 2,260.00 |
| Rosa Gonzalez........................................... | 1969 | 1,232.59 |
| Rosa Gonzalez and Candido Gonzalez... | 1970 | 882.01 |

The sole issue for decision is whether payments made by Valeriano Suarez to his former wife, Rosa Gonzalez, pursuant to a divorce decree were periodic payments in the nature of alimony within the meaning of section 71 of the Internal Revenue Code of 1954.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Valeriano Suarez, is an individual who resided in Chicago, Ill., at the time of filing his petition in this case. Dr. Suarez timely filed Federal income tax returns for the taxable years 1968, 1969, and 1970 with the Internal Revenue Service Center, Kansas City, Mo.

The petitioners, Rosa (Suarez) Gonzalez and Candido Gonzalez, husband and wife, resided in Chicago, Ill., at the time they filed their petition in this case. Mrs. Gonzalez timely filed a Federal income tax return as a single individual for the taxable year 1969 with the Internal Revenue Service Center, Kansas City, Mo. For the taxable year 1970, Mr. and Mrs. Gonzalez timely filed a joint Federal income tax return with the Internal Revenue Service Center, Kansas City, Mo.

Rosa (Suarez) Gonzalez and Valeriano Suarez were formerly husband and wife. Their marriage was dissolved by a judgment for divorce entered by the Circuit Court of Cook County, Ill., on August 26, 1968. The judgment of divorce incorporated the provisions of a property settlement agreement which had been executed by the parties. Such agreement recited the parties' desire to settle all rights arising out

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue, unless otherwise indicated.

of their marriage, including all property rights, custody and support of their minor children, and alimony for the wife. Pursuant to such agreement, Mrs. Gonzalez was given the use of the parties' jointly owned home and received outright all furniture, household goods, and other personal property contained therein. Dr. Suarez was responsible for making the mortgage payment of $320 per month.[2] Custody of the couple's four children was given to Mrs. Gonzalez. Dr. Suarez agreed to pay $430 per month for the support of the children, such amount to be reduced by 25 percent as each child reached majority or finished a 4-year college course (whichever took longer), and to pay all of the children's medical expenses. Additionally, Dr. Suarez was obligated to pay his wife's attorney's fees. Each party agreed to waive all rights in the property of the other, whether past, present, or future, including any right to alimony, dower, curtesy, estate, or homestead rights.

With respect to alimony, paragraph 6 of such agreement provided:

6. The wife shall receive $60,000.00 in alimony, payable $500.00 each and every month for 59 months and final 2 payments of $250.00 per month, a total of 61 payments, commencing with the entry of any decree for divorce and continuing until the sum of $60,000.00 shall be paid. If and when the wife shall remarry, within five years from the entry of a decree for divorce, then the total alimony of $60,000.00 shall be reduced by 25%, and if the wife shall marry after five years and before the payment of the $60,000.00, then the remaining balance unpaid at the time said wife shall become married, will be reduced by 50%.

The judgment for divorce ordered Dr. Suarez to pay to Mrs. Gonzalez "as and for alimony and child support the sum of nine hundred and thirty dollars and 00/100 ($930.00) per month, as provided for in the above agreement." He was also ordered to perform all other provisions of the agreement.

At the time of the divorce, Mrs. Gonzalez expected to receive the principal amount of $60,000 unless she remarried within 5 years from the date of the divorce decree, or prior to the payment of $60,000. She also expected that payments were to be made at the rate of $500 per month and 2 final payments of $250 per month, commencing with the entry of

---

[2] Mr. and Mrs. Gonzalez have conceded that such payments constituted alimony income taxable to Mrs. Gonzalez.

the divorce decree and continuing until the sum of $60,000 was paid. She failed to recognize that the total amount of the specified payments was only $30,000.

Dr. Suarez made cash payments to Mrs. Gonzalez of $2,000 in 1968 and $6,000 in 1969. On January 9, 1970, Rosa (Suarez) Gonzalez married Candido Gonzalez. In 1970, Dr. Suarez made cash payments to his former wife of $355 monthly for a total of $4,260. Dr. Suarez made no alimony payments to Mrs. Gonzalez after September 1973. She never took any action in the Illinois courts to object to the reduction in her alimony payments in 1970 or to their discontinuance in 1973.

In his notices of deficiency, the Commissioner took alternative positions in order to insure consistent treatment of the payments in question. In the notice to Dr. Suarez, it was determined that the payments to his former wife were nondeductible payments made as part of a property settlement. In his notices of deficiency to Mr. and Mrs. Gonzales, the Commissioner determined that the payments to Mrs. Gonzalez in 1969 and 1970 were periodic payments of alimony taxable to her under section 71(a).

### OPINION

Section 215 permits a husband to deduct payments made during his taxable year which are includable under section 71 in the gross income of his former wife. Section 71(a)(1) includes in a wife's gross income periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is imposed on her former husband under a decree of divorce. Under section 71(c), installment payments of a principal sum which is specified in the decree shall not be treated as periodic payments unless the principal sum is to be paid or may be paid over a period ending more than 10 years from the date of the decree. The issue in this case is whether the payments were "periodic" within the meaning of section 71(a)(1) and (c). Although he issued protective notices of deficiency, the Commissioner's principal concern is that the payments be treated consistently, and on brief, he argued that the payments were includable in Mrs. Gonzalez' gross income and therefore deductible by Dr. Suarez.

Mr. and Mrs. Gonzalez contend that inasmuch as the agreement specifies a principal sum to be paid in installments over a period of 61 months, which is less than 10 years, the payments cannot be considered periodic under the provisions of section 71(a)(1). They take the position that the terms of the agreement are clear, that such terms must be followed by this Court, and that if the agreement is to be modified, the modification must be done by the Illinois courts. However, simple multiplication reveals that the principal sum of $60,000 cannot be satisfied by 59 payments of $500 and 2 final payments of $250. Such a payment schedule yields a total of only $30,000, and Mr. and Mrs. Gonzalez have offered no explanation as to how the remaining $30,000 was to be paid. Thus, the terms of the agreement are not clear; rather, the agreement is ambiguous on its face, and to determine the tax treatment of the payments made under such agreement, we must interpret it. *Bardwell v. Commissioner*, 318 F.2d 786, 790 (10th Cir. 1963), affg. 38 T.C. 84 (1962); *Thorsness v. United States*, 260 F.2d 341, 344 (7th Cir. 1958).

In interpreting the provisions of a property settlement agreement, it is the intention of the parties we must ascertain.[3] *Thorsness v. United States*, 260 F.2d at 344; *Lehman v. United States*, 139 F. Supp. 10, 12 (N.D. Ill. 1956), affd. 239 F.2d 139 (7th Cir. 1956); *Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 154 N.E.2d 683, 689 (1958); *United States Trust Co. of New York v. Jones*, 414 Ill. 265, 111 N.E.2d 144, 147 (1953); *LaSalle National Ins. Co. v. Executive Auto Leasing Co.*, 121 Ill. App.2d 430, 257 N.E.2d 508, 512 (Ct. App. 1970). Moreover, where the agreement is ambiguous, we may look to extrinsic evidence to ascertain the parties' intent. *Bardwell v. Commissioner*, 318 F.2d at 790; *Thorsness v. United States, supra; Weiland Tool & Mfg. Co. v. Whitney*, 44 Ill.2d 105, 251 N.E.2d 242, 247 (1969). Having considered the provisions of paragraph 6, the other provisions of the

---

[3] In fact, the agreement was incorporated into the divorce decree; under Illinois law, the agreement is merged into the decree and thereafter is enforceable as part of the decree. *Hoffman v. Commissioner*, 54 T.C. 1607, 1612 (1970), affd. per curian 455 F.2d 161 (7th Cir. 1972), and cases cited therein. However, where the provisions of a property settlement agreement are incorporated into the divorce decree, the intent of the parties to the agreement remains the determining factor in interpreting the decree. *Vinci v. Vinci*, 131 Ill. App.2d 496, 266 N.E.2d 379, 382 (Ct. App. 1970); *Brandel v. Brandel*, 69 Ill. App.2d 264, 216 N.E.2d 21, 23 (Ct. App. 1966).

agreement, and the testimony of Mrs. Gonzalez,[4] we have concluded that the parties intended that the principal sum of $60,000 be paid in monthly installments of $500 and 2 final payments of $250 over a period of 10 years and one month (121 months), and that the provision for 61 monthly payments contained in paragraph 6 of the agreement was the result of a mathematical error.

The agreement specified a lump-sum payment for $60,000, and Mrs. Gonzalez testified that, barring remarriage, she expected to receive such amount. Thus, it is undisputed that the parties intended that Dr. Suarez pay Mrs. Gonzalez the total sum of $60,000 if she did not remarry. The agreement further provided for monthly payments of $500, except for the final 2 payments of $250. Again, Mrs. Gonzalez testified as to her understanding of the parties' agreement and confirmed that she expected to receive, and prior to her remarriage did in fact receive, the sum of $500 per month as alimony pursuant to the terms of the agreement. There was no evidence that the parties contemplated that any payments would be made as alimony other than the specified install-ments of $500 and $250. Since both the principal amount of $60,000 and the amount of the monthly payments were undisputed, it follows that a mistake was made in computing the number of such payments to be made. The correct number of payments is readily ascertainable by a simple mathemati-cal calculation. The total amount of $60,000 is satisfied by 119 monthly payments of $500, and 2 final payments of $250, for a total of 121 monthly payments.

A reading of paragraph 6 itself also supports the conclusion that more than 61 payments were intended. The agreement provided that the total alimony of $60,000 would be reduced by 25 percent in the event of the wife's remarriage within 5 years of the entry of the divorce decree. However, the agreement further provided that "if the wife shall marry *after five years and before the payment of the $60,000.00*, then the remaining balance unpaid at the time said wife shall become married, will be reduced by 50% [emphasis supplied]." The

---

[4] In reaching our conclusion in this case, we have not relied upon the report or testimony of the expert witness with respect to the meaning of the agreement, to which Mr. and Mrs. Gonzalez and the Commissioner objected.

provision for a reduction in payments should the wife remarry after 5 years (60 months) is another indication that the parties contemplated that the payments would extend beyond the 61-month period stated in the agreement.

Finally, such an interpretation is supported by the parties' actions with respect to the agreement. After Mrs. Gonzalez' remarriage, Dr. Suarez paid a total of $4,260, or $355 per month, for 1970. Paragraph 6 of the agreement provided, inter alia, that if Mrs. Gonzalez remarried within 5 years from the entry of the decree of divorce, the total alimony of $60,000 would be reduced by 25 percent, or $15,000. Before Mrs. Gonzalez' remarriage in January 1970, Dr. Suarez had made 16 monthly payments of $500, aggregating $8,000 for the years 1968 and 1969. Therefore, as of January 1970, the total amount due Mrs. Gonzalez under the agreement was $45,000 ($60,000 less $15,000 because of her remarriage); since $8,000 had been paid previously, a total of $37,000 remained to be paid. Since the last 2 payments were to be in the amount of $250, for a total of $500, the monthly payment in 1970 would be $354.37 if the remaining balance of $36,500 is divided by 103 months (that is, 121 minus 16 monthly payments previously made and minus the 2 final payments). In fact, Dr. Suarez paid $355 per month during 1970. His payment of such amounts during 1970, and Mrs. Gonzalez' acceptance of such monthly amounts, constitute another indication that both parties understood that the total number of monthly payments would be 121, rather than 61 as stated in the agreement. Moreover, alimony is often made payable over a period of 121 months in order to have the payments treated as alimony payments under section 71, and such fact offers an explanation of why the parties intended for the payments to be made over such period; whereas, there is no reason under Illinois law or otherwise as to why the parties may have desired to have the payments made over a shorter period.

Counsel for Mr. and Mrs. Gonzalez argued that the fact that Dr. Suarez terminated his alimony payments in September 1973 supports the Gonzalez' contention that only 61 payments were intended. Mrs. Gonzalez did testify that she received no alimony payments after September 1973. However, she also testified that her understanding was that her former husband

continued to be obligated to make alimony payments pursuant to the terms of their agreement after September 1973; she stated that she forebore enforcement proceedings because she continued to receive support for the children and was satisfied with such amount. In the light of such testimony, the termination of the payments in 1973 is not sufficient to overcome the other indications that payments were to continue for a period of 121 months. Accordingly, we hold that since the payments were to be made over a period of more than 10 years, they were periodic payments includable in Mrs. Gonzalez' gross income under section 71(a)(1) and deductible by Dr. Suarez pursuant to section 215.

As an alternative basis for our holding, we find that regardless of whether the parties intended 61 or 121 monthly payments, the payments were includable in Mrs. Gonzalez' gross income and therefore deductible by Dr. Suarez pursuant to section 1.71–1(d)(3)(i), Income Tax Regs. Such regulations provide that where payments under a decree are to be paid over a period of 10 years or less, such payments are considered "periodic payments" for the purposes of section 71(a) if the following conditions are satisfied:

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, *remarriage of the wife,* or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

[Emphasis supplied.]

Payments satisfying such conditions are considered periodic payments regardless of whether the contingencies are set forth in the decree or instrument, or imposed by local law, and regardless of whether the principal sum payable in the absence of the occurrence of any contingency is set forth in the decree. Sec. 1.71–1(d)(3)(ii), Income Tax Regs. The regulations are essentially a codification of prior cases holding that, where the amount payable may be reduced or terminated upon the happening of certain events, no principal sum has been specified, and therefore the payments are periodic rather than installment payments of a principal sum. E.g., *Prewett v. Commissioner,* 221 F.2d 250 (8th Cir. 1955), revg. 22 T.C. 270 (1954); *Davidson v. Commissioner,* 219 F.2d 147 (9th Cir. 1955) modifying a Memorandum Opinion of this Court; *Myers v.*

*Commissioner,* 212 F.2d 448 (9th Cir. 1954) revg. a Memorandum Opinion of this Court; *Baker v. Commissioner,* 205 F.2d 369 (2d Cir. 1953) revg. on this issue 17 T.C. 1610 (1952).

In the case before us, the payments were to be reduced by 25 percent if Mrs. Gonzalez remarried within 5 years from the date of the divorce, or by 50 percent if she remarried after 5 years but before the payment of $60,000. Mr. and Mrs. Gonzalez argue that because of Mrs. Gonzalez' remarriage, the contingency was removed, that thereafter a principal sum to be paid was ascertainable, and that therefore the regulations are inapplicable. Of course, with the benefit of hindsight, we can now calculate a sum certain to be paid under the decree. However, under section 71, the decisive question is whether, at the time of the decree, the parties intended to provide that a principal sum would be payable in all events, or that payments were to be made, the amounts and duration of which would depend upon future events. Cf. *Burton v. United States,* 139 F. Supp. 121, 126 (D. Utah 1956). At that time, the payments were subject to modification upon the remarriage of the wife and therefore were uncertain; the fact that such contingency subsequently was resolved does not alter the intention of the parties at the time of the divorce nor affect the applicability of the regulations. Accordingly, the payments satisfied the contingency condition described in subdivision *(a)* of section 1.71–1(d)(3)(i), Income Tax Regs.[5] *Salapatas v. Commissioner,* 446 F.2d 79 (7th Cir. 1971), affg. a Memorandum Opinion of this Court.

Inasmuch as the Commissioner determined that the payments which Mrs. Gonzalez received from Dr. Suarez were alimony payments includable in her gross income under section 71, she had the burden of proving that such payments were not in the nature of alimony. *Ryker v. Commissioner,* 33 T.C. 924, 929 (1960). In their reply brief, Mr. and Mrs. Gonzalez raised, for the first time, the argument that the

---

[5] Dr. Suarez argued that an alimony award is also subject to the contingency that it may be modified as a result of a change in the economic conditions of the parties. However, it appears that payments of the type involved in this controversy are not subject to modification under Illinois law. *Maginnis v. Maginnis,* 323 Ill. 113, 153 N.E. 654, 656 (1926); *Palacio v. Palacio,* 33 Ill. App.3d 1074, 339 N.E.2d 427, 430–431 (Ct. App. 1975); *Roberts v. Roberts,* 90 Ill. App.2d 184, 234 N.E.2d 372, 376 (Ct. App. 1967).

payments were not in the nature of alimony. Whether the payments in question were in the nature of or in lieu of alimony or support, as opposed to a settlement of property rights, is a question of fact, resolution of which does not depend upon any labels the parties may attach to the payments. *Bardwell v. Commissioner*, 318 F.2d 786, 789 (10th Cir. 1963), affg. 38 T.C. 84 (1962); *Sydnes v. Commissioner*, 68 T.C. 170 (1977); *Hesse v. Commissioner*, 60 T.C. 685, 691 (1973); *Ryker v. Commissioner, supra*. In order to prevail with respect to such issue, Mr. and Mrs. Gonzalez had the burden of proving that Mrs. Gonzalez had an interest in property which she relinquished in exchange for the principal sum of $60,000. *Hesse v. Commissioner, supra* at 692. She failed to prove that she relinquished any property interest in exchange for such payment, and consequently, we must sustain the Commissioner's determination that the payments in question were in the nature of or in lieu of support or alimony. *Salapatas v. Commissioner, supra.*

The conclusion that the payments received by Mrs. Gonzalez were in the nature of alimony is not inconsistent with *Hoffman v. Commissioner*, 54 T.C. 1607 (1970), affd. per curiam 455 F.2d 161 (7th Cir. 1972), in which it was held that under Illinois law, any "legal obligation" of the former husband with respect to the payment of alimony terminated upon the wife's remarriage, and that therefore the payments in question were not includable in the wife's gross income under section 71(a). It was also held that a provision in the property settlement agreement for the continuation of alimony payments after the wife's remarriage was of no effect because such provision was in derogation of State law. However, the court recognized that where the agreement provides for a settlement in lieu of alimony, the wife is entitled, regardless of remarriage, to receive unpaid installments of such settlement. Ill. Rev. Stat. ch. 40, sec. 19. Since the payments at issue in the case before us come within the provision relating to a settlement in lieu of alimony, this case is distinguishable from *Hoffman* and not governed by it. Thus,

the alimony requirement described in subdivision (b) of section 1.71–1(d)(3)(i), Income Tax Regs., is also satisfied.

> *Decision will be entered for the petitioner in docket No. 6141– 73.*
>
> *Decision will be entered for the respondent in docket No. 6687–73.*