MARGARET E. MIVEC, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mivec v. Commissioner
Docket No. 12158-79.
United States Tax Court
T.C. Memo 1981-695; 1981 Tax Ct. Memo LEXIS 49; 43 T.C.M. (CCH) 24; T.C.M. (RIA) 81695; December 7, 1981. *49 H and W executed a document entitled "PROPERTY SETTLEMENT AGREEMENT," which was subsequently incorporated into their divorce decree. Such agreement provided for the division of their marital property and also provided that H was to make monthly "alimony" payments to W until such time as H reached age 62 and retired. Held, the monthly payments were intended to be in the nature of alimony or support and were not part of a property settlement. Held, further, the duration of such payments was contingent on future events; therefore, such payments were "periodic" within the meaning of sec. 71, I.R.C. 1954, and are includable in W's gross income. J. Randall Aikman, for the petitioner. Deborah Gehring, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 461.05 in the petitioner's Federal income tax for 1976. The sole issue for decision is whether the payments which the petitioner received in 1976 from her former husband were alimony payments includable in her gross income. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Margaret E. Mivec, maintained her *50 legal residence in Brownsburg, Ind., at the time she filed her petition in this case. She timely filed her Federal income tax return for 1976 with the Internal Revenue Service Center, Memphis, Tenn.
The petitioner and Frank Mivec were married on May 30, 1942. During the course of such marriage, the petitioner was primarily a housewife; she raised the two children of such marriage and her child by a former marriage, whom Mr. Mivec adopted; she also took care of Mr. Mivec's parents for many years. Although she had worked prior to such marriage, the petitioner worked less than 1 year during the 34 years she was married to Mr. Mivec. The property brought into the marriage by the petitioner consisted of some furniture, a small cottage which was worth approximately $ 3,000, an automobile, and a small bank account. The property brought into the marriage by Mr. Mivec consisted of an automobile on which he was still repaying a loan. In July 1976, the petitioner was 62 years old, and Mr. Mivec was 55 years old. At such time, Mr. Mivec was employed by IBM and was earning an annual salary of approximately $ 32,000. He had been employed by IBM during the entire term of his marriage to *51 the petitioner. As an employee of IBM, Mr. Mivec was a participant in a non-contributory pension plan. Such plan would have provided him with an annual pension of $ 8,801 at age 65 and a reduced amount if he elected to retire at an earlier age. In 1976, IBM had a minimum retirement age of 55 and a mandatory retirement age of 65. In 1977, IBM raised its mandatory retirement age to 70. At the time of trial, Mr. Mivec was employed by the Merchant's National Bank. On July 17, 1976, the petitioner and Mr. Mivec entered into a property settlement agreement, which provided, in part: PROPERTY SETTLEMENT AGREEMENT
WHEREAS, the husband herein, Frank Mivec, has petitioned the Marion [Indiana] Superior Court, * * * for Dissolution of the Marriage between said husband and wife [the petitioner], * * *; and WHEREAS, the husband and wife herein have between themselves agreed as to their respective rights to property, and the husband and wife herein desire to delineate the terms of their agreement; NOW, THEREFORE, in consideration of the premises, of the mutual covenants and agreements hereinafter set forth, and the acts of the parties pursuant hereto, and in settlement, adjustment, and compromise *52 of all property questions and rights which may arise in the event a dissolution of marriage is decreed by the Court, and upon the decree by the Court of the dissolution of marriage, and the approval by the Court of this agreement, the following provisions shall become effective and shall bind the husband and wife herein: 1. The wife shall retain her interest in, and present possession and ownership of, a house in which the parties resided as husband and wife * * * and the husband * * * agrees that he has no interest whatsoever in said house and real estate, and agrees that he relinquish any and all interest in ownership which he may have in the house and real estate, and the furnishings, furniture, and household goods of the parties located therein * * * 2. The husband and wife agree that the husband shall be given clear possession and title to one 1972 Buick LeSabre automobile, and that the wife shall be given clear title and possession to one 1972 Chevrolet Nova automobile * * * 3. Husband and wife agree that the husband shall be given ownership, possession, and title to all thirty-six shares of IBM stock presently held jointly between husband and wife, and that the wife shall *53 surrender to the husband all of her interest in said shares of stock * * * 4. The husband and wife agree that the husband shall have ownership, possession, and title to a certain bank account, in which is deposited approximately ten thousand dollars ($ 10,000.00) at American Fletcher National Bank, and that the wife shall surrender to the husband all of her interest in said bank account * * * 5. The husband agrees to pay to the wife, as alimony, the amount of $ 560.00 per month, until such time as the husband reaches 62 years of age and retires. This Agreement shall be submitted to the Court prior to the Decree of Dissolution of Marriage by the Court, and if the Court approves this Agreement, it shall be carried and effective upon the Decree of Dissolution of Marriage. This Agreement has been executed in the State of Indiana and shall be governed and interpreted according to the laws of the State of Indiana. The property included in such agreement represented most of the real and personal property acquired by the petitioner and Mr. Mivec during the course of their marriage. At the time of such agreement, the fair market value of real property was approximately $ 41,000, and the *54 fair market value of the IBM stock was approximately $ 10,000. However, the real property was encumbered by a $ 10,000 mortgage and by outstanding property taxes, both of which the petitioner assumed. The provisions of the settlement agreement were reached as a result of negotiations between the attorneys representing the petitioner and Mr. Mivec. Originally, Mr. Mivec had offered to give the petitioner all of the marital property. However, on the advice of his attorney, Mr. Mivec subsequently decided to retain some of such property. After such decision was made, the petitioner requested that a provision for monthly payments be included in the settlement agreement. She refused a proposal that his liability be limited to a total sum; she insisted that the monthly payments continue for a number of years--they ultimately agreed on the provision that the payments would be made until Mr. Mivec reached age 62 and retired. Mr. Mivec determined the amount of the monthly payments based on his calculation of the petitioner's fixed monthly expenses. He did not execute an agreement to secure his obligation to make such payments. Mr. Mivec's entitlement to a pension from IBM was never discussed *55 as a part of the property settlement negotiations. However, he had in mind that he probably would retire at age 62, and he insisted on terminating his liability for making the monthly payments to the petitioner when he retired because thereafter he would have insufficient funds to continue to make such payments. On July 19, 1976, the Marion Superior Court issued a decree dissolving the marriage of the petitioner and Mr. Mivec. Such decree expressly approved the provisions of the property settlement agreement and declared that the provisions of such agreement would be enforced by that court. In June 1978, the petitioner received a letter from Mr. Mivec's attorney offering to amend the provisions of the settlement agreement to extend the period for making monthly payments for an additional 4 years at $ 100 per month. The petitioner declined to accept such offer. During 1976, Mr. Mivec paid the petitioner 1 advance payment of $ 155.31 and 5 monthly payments of $ 560.00, a total of $ 2,955.31. The petitioner did not report such payments as gross income on her 1976 return. In his notice of deficiency, the Commissioner determined that such payments were periodic alimony payments and *56 that, therefore, such payments were includable in her gross income. OPINION The only issue for decision is whether the petitioner must include in gross income the payments received from her former husband during 1976. Section 71(a)(1) of the Internal Revenue Code of 1954[1] provides that: If a wife is divorced * * * from her husband under a decree of divorce * * *, the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce * * *. See sec. 1.71-1(b)(1), Income Tax Regs.Section 71(a)(1) applies only to payments made because of the family or marital relationship in recognition of the general obligation to support which is made specific by the decree instrument or agreement. Sec. 1.71-1(b)(4), Income Tax Regs. On the other hand, it is well settled that where, upon divorce, a husband makes payments in satisfaction of the property *57 rights of his wife, the amounts received by the wife, even though periodic and incident to a divorce, are capital in nature and, therefore, are not includable in her gross income under section 71. McCombs v. Commissioner, 397 F. 2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court; Bardwell v. Commissioner, 318 F. 2d 786, 789 (10th Cir. 1963), affg. 38 T.C. 84 (1962); Wright v. Commissioner, 62 T.C. 377, 389 (1974), affd. 543 F. 2d 593 (7th Cir. 1976); Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. without pub. op. 511 F. 2d 1393 (3d Cir. 1975); Mills v. Commissioner, 54 T.C. 608, 615 (1970), affd. 442 F. 2d 1149 (10th Cir. 1971). In determining whether the payments were alimony or whether they were part of a property settlement, we must ascertain the intention of the parties. Bardwell v. Commissioner, supra; Thorsness v. United States, 260 F. 2d 341, 344 (7th Cir. 1958); Suarez v. Commissioner, 68 T.C. 857, 861 (1977). Such determination is a question of fact; we are not bound by the labels the parties or a court may have placed on such payments. Bardwell v. Commissioner, supra; Hesse v. Commissioner, supra; Mills v. Commissioner, supra; Ryker v. Commissioner, 33 T.C. 924, 929 (1960). *58 To determine the intention of the parties, the courts have looked to objective factors such as: (1) Whether a fixed sum is stated; (2) whether the payments are related to either spouse's income; (3) whether the payments are to continue without regard to the remarriage or death of the wife; (4) whether the wife relinquished property rights in exchange for the payments; and (5) whether the husband's obligation to make the payments is secured. McCombs v. Commissioner, supra; Bardwell v. Commissioner, supra; Bernatschke v. United States, 176 Ct. Cl. 1234, 364 F. 2d 400 (1966); Hesse v. Commissioner, supra; Watkins v. Commissioner, 53 T.C. 349 (1969); Thompson v. Commissioner, 50 T.C. 522 (1968); Ryker v. Commissioner, supra.
The petitioner argues that the monthly payments were part of a nontaxable division of property and were not in the nature of alimony or support. She bases such argument on Indiana Ann. Stat. section 31-1-11.5-11 (Burns Supp. 1980). Such section provides that a court shall divide the property of the spouses in a just and reasonable manner either by division of the property in kind, or by setting such property or parts thereof over to one of the spouses, and requiring *59 either spouse to pay a sum, either in gross or in installments, as may be just and proper. In determining what is a just and reasonable property division, such section lists five factors which a court shall consider: (1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker; (2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift; (3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children; (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property; (5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties. [Ind. Ann. Stat. sec. 31-1-11.5-11(a) (Burns Supp. 1980).] The petitioner contends that such factors weigh heavily in her favor, and that if she and Mr. Mivec had not entered *60 into the settlement agreement, the Marion Superior Court would have awarded her all or nearly all of the marital property. Particularly, she argues that such court would have reached such conclusion because of Mr. Mivec's earning capacity and his right to the IBM pension. Therefore, she contends that the monthly payments were the consideration for allowing Mr. Mivec to retain the Buick, the bank account, and the IBM stock. To accept the petitioner's argument would require us to indulge in a great deal of speculation over how the Marion Superior Court would apply the criteria and over what conclusion the court would reach. It is not altogether clear to us that such court would have awarded the petitioner virtually all the marital property. Neither party brought any substantial property into the marriage, although the petitioner's contribution did exceed slightly that of Mr. Mivec. Throughout the marriage, the petitioner contributed her services as a homemaker, caring for the family, but Mr. Mivec supported the family through his work at IBM. At the time of the divorce, Mr. Mivec did clearly possess the greater earning capacity, but during the negotiations that led to the divorce, *61 there was no discussion of his right to a pension from IBM. Moreover, although the Marion Superior Court would have been required to consider his rights to such pension in determining the manner in which the marital property would be distributed, it could not have conferred on the petitioner any right to any portion of such pension. Wilson v. Wilson, 409 N.E. 2d 1169 (Ind. Ct. App. 1980); Hiscox v. Hiscox, 385 N.E. 2d 1166 (Ind. Ct. App. 1979); Savage v. Savage, 374 N.E. 2d 536 (Ind. Ct. App. 1978). When we weigh these factors, it is reasonable to conclude that the court might favor the petitioner, but we are not convinced that the court would have awarded all the marital property to her. The settlement agreement did effect a division of the marital property: To the petitioner, it awarded one of the automobiles and the family residence, which had a net value in excess of $ 31,000--taking into consideration the mortgage and lien on the property and the furnishings included therein. To Mr. Mivec, it awarded the IBM stock, the bank account, and the other automobile, having an aggregate value somewhat in excess of $ 20,000. [2] Thus, the division of property slightly favored the petitioner, *62 and such a result may well have been in line with the conclusion that would have been reached by the Marion Superior Court. The settlement agreement denominated the monthly payments to the petitioner as "alimony," and after an examination of all the surrounding circumstances, there is insufficient reason to conclude that such payments were not in fact alimony. The amount of such payments was based on Mr. Mivec's estimate of what the petitioner needed for her maintenance. See McCombs v. Commissioner, 397 F. 2d at 7; Bardwell v. Commissioner, 318 F. 2d at 790. The petitioner rejected a proposal to limit Mr. Mivec's liability to fixed sum: She wished to be assured that the payments would continue for a number of years and that they would continue at least until Mr. Mivec retired. Consequently, there was no way of calculating the total amount of Mr. Mivec's liability, and he was not required to provide any security for the performance of his obligation. See Schottenstein v. Commissioner, 75 T.C. 451, 457 (1980); *63 Ryker v. Commissioner, 33 T.C. at 929. In addition, the requirement that the monthly payments continue at least until Mr. Mivec reached age 62 assured the petitioner that she would receive monthly payments totaling at least $ 41,440, [3] and if Mr. Mivec continued to work beyond that age, the total amount of the payments could be much larger. Even discounting the value of such payments, [4] it is clear that the total amount of the monthly payments significantly exceeded the value of the property awarded to Mr. Mivec by the settlement agreement. Hence, the total amount of such payments could not have been intended to compensate the petitioner for the property retained by Mr. Mivec, and therefore, at least a portion of such payments must have been intended to be for the petitioner's support. In summary, the settlement agreement awarded the petitioner slightly more than one-half of the marital property and required Mr. Mivec to make monthly payments *64 to her which were designed to provide for her support, which he was required to continue to make as long as he was working and had sufficient funds to do so, and the value of which significantly exceeded the marital property awarded to Mr. Mivec. The petitioner has the burden of proving that such payments were not in the nature of alimony. Rule 142(a), Tax Court Rules of Practice and Procedure; Suarez v. Commissioner, 68 T.C. at 866; Ryker v. Commissioner, 33 T.C. at 929. On this record, we hold that she has failed to carry that burden. In addition to the requirement that payments be in the nature of alimony or support, section 71 imposes the additional requirement that to be includable in the wife's gross income such payments must also be "periodic." Payments that are to continue for more than 10 years are considered periodic payments within the meaning of such provision. Sec. 71(c)(2); sec. 1.71-1(d)(2), Income Tax Regs. Also, section 1.71-1(d)(3)(i), Income Tax Regs., provides that where payments are to be paid over a period of 10 years or less, such payments will be considered periodic if the following conditions are satisfied: (a) Such payments are subject to any one or more *65 of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. [Emphasis added.] Such regulation is essentially a codification of prior cases holding that, where the amount payable may be reduced or terminated upon the happening of certain events, the payments are periodic. Suarez v. Commissioner, 68 T.C. at 864-865. The testimony indicated that at the time of the negotiations leading to the settlement agreement, Mr. Mivec was contemplating that he would retire when he reached age 62. If he had carried out such plan, the payments to the petitioner would have been made for less than 10 years since he was age 55 at the time of the divorce. However, notwithstanding what Mr. Mivec may have been contemplating, the settlement agreement actually provided that the monthly payments would be made to the petitioner "until such time as * * * [Mr. Mivec] reaches 62 years of age and retires." (Emphasis added.) Thus, if he does not retire at age 62, he will be required to continue to make the payments beyond that age, and he may, in fact, be required to make *66 the payments for more than 10 years. Moreover, the obligation to make the payments was subject to the contingency that Mr. Mivec reach age 62 and retire. See sec. 1.71-1(d)(3)(i)(a), Income Tax Regs.; Salapatas v. Commissioner, 446 F. 2d 79 (7th Cir. 1971), affg. a Memorandum Opinion of this Court; Suarez v. Commissioner, supra; Lee v. Commissioner, 10 T.C. 834 (1948); Young v. Commissioner, 10 T.C. 724 (1948). Consequently, in any event, the payments were periodic within the meaning of section 71(a), and we hold that the petitioner is required to include such payments in her gross income. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue, unless otherwise indicated.↩
2. We assume, and the petitioner has offered no evidence to the contrary, that the fair market value of the Nova and the furnishings at least equaled, and more likely exceeded, the fair market value of the Buick.↩
3. Mr. Mivec would have been required to make monthly payments for at least 6 years and 2 months at $ 560 per month, totaling $ 41,440. ↩
4. Applying a 10-percent discount factor, the fair market value of such payments would be at least $ 31,334.↩