ALLEN HOFFMAN AND PEARL S. HOFFMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5906-67. Filed August 12, 1970.

*Leslie R. Bishop* and *Charles P. Kocoras*, for the petitioners.
*Bert L. Kahn*, for the respondent.

OPINION

QUEALY, *Judge:* The respondent determined that there was a deficiency in the income tax due from the petitioners for the taxable year 1963 in the amount of $456.97. This determination was based on two adjustments, namely (1) the inclusion of $1,690 received by petitioner Pearl S. Hoffman from her former husband, George R. Chamlin, and (2) the disallowance of $67.60 of the claimed medical expense deduction due to the increased medical expense limitation occasioned by the first adjustment.

---

The only issue presented for decision is whether $1,690 paid to petitioner Pearl S. Hoffman in 1963 by George R. Chamlin, her former husband, was received by her in discharge of a legal obligation imposed on George R. Chamlin within the meaning of section 71(a)(1), I.R.C. 1954,[1] and therefore includable in her gross income.

An additional issue arising from the medical expense adjustment is entirely dependent on the outcome of the major issue defined above.

The facts have been stipulated. The stipulation of facts and exhibits thereto are incorporated herein by this reference.

Petitioners Pearl S. Hoffman (hereinafter referred to as petitioner) and Allen Hoffman (hereinafter referred to as Hoffman), husband and wife, were legal residents of Skokie, Ill., at the time their petition was filed. They filed a joint income tax return for 1963 with the district director of internal revenue at Chicago, Ill.

Petitioner, whose maiden name was Silver, and George R. Chamlin (hereinafter referred to as Chamlin) were married on November 23, 1943. Two children, both girls, were born of said marriage, being: Lynn Chamlin, born June 2, 1945; and Sherry Chamlin, born October 7, 1948.

In 1950, petitioner instituted divorce proceedings against Chamlin in the Superior Court of Cook County, Ill. (which was subsequently merged into the Circuit Court of Cook County).

On July 13, 1951, petitioner and Chamlin entered into a memorandum of agreement (hereinafter referred to as the agreement) incident to the contemplated divorce. After noting that divorce proceedings had been initiated, the agreement provided in pertinent part that:

WHEREAS, the parties hereto have come to an amicable agreement concerning the disposition of certain proprietary rights arising out of the said marital relationship heretofore existing between them and are mutually desirious [sic] of reducing the same to written form;

Now, THEREFORE, it is mutually covenanted and agreed by and between the parties hereto as follows:

1. It is mutually covenanted and agreed by and between the parties hereto that all articles of household furniture, furnishings and fixtures owned by the parties hereto and located at 20 South Central Avenue, Chicago, Illinois, shall be and remain the sole and separate property of the wife.

2. It is mutually covenanted and agreed by and between the parties that the wife shall have the sole custody, care and education of the minor children of the parties herein, to-wit: LYNN CHAMLIN and SHERRY CHAMLIN, and the Husband shall have reasonable rights of visitation.

3. The Husband agrees to pay to the Wife the sum of $32.50 each and every week as and for permanent alimony and permanent child support of the minor children herein.

4. The Wife covenants and agrees that she will and she hereby waives, remises

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

and relinquishes any and all right, title or interest which she now has or might hereafter assert, in and to any property of the Husband, real, personal or mixed, of whatever nature and wheresoever situated, by reason of the marital relationship heretofore existing between them, or for any other cause including dower, homestead, and any and all other rights which arose as between the parties by virtue of the marital relationship heretofore existing between them as afore-said, except alimony, which she does not waive.

5. The Husband covenants and agrees that he will and he does hereby waive, remise and relinquish any and all right, title or interest which he now has or might hereafter assert, in and to any property of the Wife, real, personal or mixed, of whatsoever nature and wheresoever situated, by reason of the marital relationship heretofore existing between them, or for any other cause including, but not limited by alimony, support, dower, homestead, attorneys' fees and court costs, and any and all other rights which arose as between the parties by virtue of the marital relationship heretofore existing between them as aforesaid.

\*      \*      \*      \*      \*      \*      \*

9. The Husband further agrees that he will make the minor children of the parties herein, namely LYNN CHAMLIN and SHERRY CHAMLIN, irrevocable beneficiaries of a certain life insurance policy in the sum of Ten Thousand ($10,000.00) Dollars, Northwestern Mutual Life Insurance Co. No.

10. \* \* \* This agreement shall be subject to the approval of the Chancellor hearing the above designated cause, and shall be included verbatim or by reference in any decree of divorce and shall become effective simultaneously with the entry of any such decree.

A "Decree for Divorce" (hereinafter referred to as the divorce decree), dissolving the bonds of matrimony between petitioner and Chamlin, was granted by the Superior Court of Cook County on July 23, 1951. The divorce decree characterized the agreement as a property settlement agreement. It then recited the provisions of the agreement and made orders with respect to these provisions. The language of the divorce decree remained unchanged as December 31, 1963 (the end of the taxable year in question). The divorce decree stated in part that:

It Is Further Ordered, Adjudged and Decreed, that the defendant pay to the plaintiff the sum of $32.50 each and every week as and for permanent alimony and permanent child support of the minor children herein.[2]

On June 19, 1953, petitioner married Hoffman and remained married to him as of December 31, 1963. After petitioner remarried, Chamlin continued making the weekly payments of $32.50 to petitioner. Prior to January 1, 1963, Chamlin had knowledge of petitioner's remarriage. During the calendar year 1963, he made the aforesaid weekly payments to petitioner in the total amount of $1,690 (52×$32.50).

Chamlin deducted the aforesaid amount of $1,690 on the 1963 Federal income tax return he filed. Upon audit of Chamlin's 1963 return in

---

[2] Since the language of the decree does not sufficiently identify any portion of the payments as child support, they are all considered to be alimony. *Commissioner* v. *Lester*, 366 U.S. 299 (1961).

August of 1964, the deduction was allowed. The revenue agent who conducted the audit was not aware of petitioner's remarriage and believed that "Hoffman" was her maiden name.

None of the said $1,690 was included by the petitioner and Hoffman on their 1963 joint Federal income tax return.

In this case, petitioner and Chamlin entered into a memorandum of agreement incident to a contemplated divorce. The agreement, in pertinent part, required Chamlin to pay petitioner $32.50 a week as permanent alimony and permanent child support of the minor children of the couple. The divorce decree recited the provisions of the agreement and then made orders with respect to these provisions.

It has been observed numerous times that section 71(a)(1) makes no reference to alimony and that, as a consequence, the characterization given payments by State law is not controlling in determining their Federal income tax consequences, see, e.g., *Laughlin's Estate* v. *Commissioner*, 167 F. 2d 828 (C.A. 9, 1948); *Ada M. Dixon*, 44 T.C. 709 (1965). The foundation of section 71 is not the decree itself but the "legal obligation" which is made specific by the instrument or decree. The pertinent part of that section provides that:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREASE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

The petitioner contends that the existence of a "legal obligation" depends upon State law and that, pursuant to Illinois law, Chamlin was relieved of any obligation to support or pay alimony to the petitioner upon her remarriage. Consequently, such payments do not meet the conditions of section 71(a)(1).

The petitioner's argument is predicated on Ill. Rev. Stat., ch. 40, sec. 19 (1956), which provides, in part, as follows:

A party shall not be entitled to alimony and maintenance after remarriage; but, regardless of remarriage by such party or death of either party, such party shall be entitled to receive the unpaid instalments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree. * * *

Respondent contends that the "legal obligation" requirement of section 71(a)(1) is not an obligation dependent on the enforceability under local law of each individual payment, but rather is a Federal standard using the phrase "legal obligation" in the sense of the general obligation to support arising from the marital or family relationship.

On this basis, respondent further contends that the "legal obligation" requirement is fully satisfied by the recitation of the support obligation in the agreement and divorce decree.

We conclude that State law is determinative of the existence of a "legal obligation" for purposes of section 71(a)(1). This conclusion is implicit in our decision in *Martha K. Brown*, 50 T.C. 865 (1968), affirmed per curiam 415 F. 2d 310 (C.A. 4, 1969). It is also consistent with the long-established principle that State law will be applied in determining the rights or interests of the parties and that Federal law controls the manner in which these rights or interests are taxed. *Helvering* v. *Stuart*, 317 U.S. 154 (1942); *Lyeth* v. *Hoey*, 305 U.S. 188 (1938).

The respondent contends that a decision to accept local law as determinative of the existence of a "legal obligation" for purposes of section 71(a)(1) would place an insurmountable legal and factual burden on the Internal Revenue Service. He insists that this burden would be occasioned by the fact that there are 50 local law jurisdictions and that it would be a difficult task for the Service to keep abreast of Illinois law in the area let alone that of all the other States.

We regard this argument to be entirely without merit. Difficulty in compliance or administration, if accepted as a basis for decision, would nullify much of the Internal Revenue Code. In view of our discussion above, it is clear that respondent has the burden of knowing the divorce law of all the States. The entire subject of marriage and divorce has traditionally been entirely a matter of local law and neither Congress nor the Federal courts have ever claimed any jurisdiction over the area.

Recognizing that State law is determinative, we must decide whether or not the payments made to petitioner by Chamlin were made by him in discharge of a "legal obligation" existing under Illinois law.

Illinois law is clear as to the effect of remarriage on alimony and maintenance payments. Ill. Rev. Stat., ch. 40, sec. 19 (quoted in relevant part above) establishes that "A party shall not be entitled to alimony and maintenance after remarriage." This provision was enacted in 1933 as an amendment to the Illinois Divorce Act. Prior to the amendment, it was generally accepted that the remarriage of the wife was a change of circumstance justifying the modification of the divorce decree to the extent of canceling alimony payments. The amendment adopted the general rule and made the cancellation mandatory upon the remarriage of the wife regardless of any other change of circumstance. *Adler* v. *Adler*, 373 Ill. 361, 26 N.E. 2d 504 (1940); *Banck* v. *Banck*, 322 Ill. App. 369, 54 N.E. 2d 577 (1944); and *Miller* v. *Miller*, 317 Ill. App. 447, 46 N.E. 2d 102 (1943).

In *Martha K. Brown, supra,* this Court held that where the husband's sole liability was imposed by the decree and where State law provided that alimony was to cease on the wife's remarriage, the payments made to the wife after her remarriage were not made pursuant to a "legal obligation" and therefore not taxable to her under section 71(a)(1). In reaching our conclusion, we took no position as to what result would have ensued had there been a written agreement between the parties contemporaneous with the decree.

It must now be decided whether our conclusion in *Martha K. Brown* should also apply notwithstanding the written agreement for the payment of alimony which was entered into by the parties contemporaneous with the decree of divorce.

Respondent argues that in the instant case, the agreement had a separate existence apart from the decree and that the obligations the agreement imposed continued to be binding on the parties after the remarriage of the parties. On the basis of Illinois law and the facts in this case, we disagree and regard *Martha K. Brown* as controlling precedent for purposes of this case.

The agreement provided that Chamlin was to pay $32.50 each week "as and for permanent alimony and permanent child support." Paragraph 10 of the agreement (set out above) went on to provide that the provisions of the agreement were applicable only if a decree of divorce had been entered with the agreement having been included therein. Therefore, it would appear that by the terms of the parties' own contract it was the decree which was to establish the rights and duties of the parties, and that without it, the agreement could have no legal effect.

Furthermore, Illinois courts are not controlled by agreements of the parties regarding alimony and may accept or reject them. To the extent the courts can modify such agreements, they lose their contractual nature. *Maginnis* v. *Maginnis,* 323 Ill. 113, 153 N.E. 654 (1926); *Herrick* v. *Herrick,* 319 Ill. 146, 149 N.E. 820 (1925). Hence, as to alimony, it is the act of adoption of the alimony contract by the court which establishes the legal obligations of the parties.

In any event, it is established under Illinois law that where an agreement is incorporated into the divorce decree, it loses its contractual nature and is merged into the decree. Thereafter, it is enforced as an element of the decree. *Adler* v. *Adler, supra; Smith* v. *Smith,* 334 Ill. 370, 166 N.E. 85 (1929). Consequently, after a divorce decree is entered, the rights of the parties depend upon the decree and not upon their agreement. *Jacobs* v. *Jacobs,* 328 Ill. App. 133, 65 N.E. 2d 588 (1946).

It is certain under Illinois law that there can be no agreement entered into between the parties in derogation of the statutory provision requiring a cessation of alimony payments upon the remarriage of the wife. *Miller* v. *Miller, supra.* In addition, an Illinois court cannot

establish as elements of a decree provisions which are in derogation of Ill. Rev. Stat., ch. 40, sec. 19. *Balasa* v. *Balasa*, 11 Ill. App. 2d 103, 136 N.E. 2d 594 (1956).

In addition, the Illinois law requiring the termination of alimony upon the remarriage of the wife is a mandatory provision and operates automatically as a matter of law. By implication, Ill. Rev. Stat., ch. 40, sec. 19, is a part of the divorce decree. It has the same effect as though it was expressly included therein, with the legal result of the termination of alimony flowing from the event of remarriage. *Walters* v. *Walters*, 341 Ill. App. 561, 94 N.E. 2d 726 (1950) ; *Banck* v. *Banck*, *supra;* and *Adler* v. *Adler*, *supra.*

The payments in question were voluntarily characterized by the parties in the agreement and described by the Illinois court in its decree "as and for permanent alimony and permanent child support." It is clear that the payments were not part of a lump-sum property settlement and that they were not made in satisfaction of a fixed sum in lieu of alimony (also known as lump-sum alimony, alimony in gross, and gross alimony) or for the surrender of other marital rights.

Consequently, the case before us is distinguishable from the Illinois cases where the decree, or an agreement of the parties which is merged into the decree, provides for a lump-sum settlement between the parties payable in installments. Those cases fall within that part of Ill. Rev. Stat., ch. 40, sec. 19, which states that a party shall be entitled to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree. Illinois courts are not permitted to modify a divorce decree making a property settlement or gross alimony awards because of a later change of circumstances, *Roberts* v. *Roberts*, 90 Ill. App. 2d 184, 234 N.E. 2d 372 (1967), and they cannot give relief from the obligation to pay past-due alimony because the rights to such amounts become vested. *Mendenhall* v. *Mendenhall*, 43 Ill. App. 2d 294, 193 N.E. 2d 207 (1963).

On this basis, we find that the agreement had no separate existence apart from the decree. Instead, it became merged into the decree, and subsequently, the rights and obligations of the parties were dependent upon the decree and not their agreement. Although Chamlin was once under a "legal obligation" under the decree to make periodic payments to petitioner for alimony and child support, under Illinois law his duty with respect to such periodic payments terminated on the remarriage of the petitioner. In these circumstances, we regard our decision in *Martha K. Brown, supra,* as controlling precedent. Hence, the payments in issue were not made in discharge of a "legal obligation" within the meaning of section 71(a)(1) and therefore are not taxable to the petitioner.

*Decision will be entered for the petitioners.*