CHARLES R. BLAKEY AND FAY L. BLAKEY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

SANDRA A. BETTINO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3085–80, 4590–80.     Filed June 10, 1982.

*James G. Arthur*, for the petitioners in docket No. 3085–80.
Sandra A. Bettino Major, pro se in docket No. 4590–80.
*Clement Shugerman*, for the respondent.

PARKER, *Judge*: Respondent determined deficiencies in petitioners' 1976 Federal income taxes in the amount of $1,136 in docket No. 3085–80 and $1,454 in docket No. 4590–80. The issues for decision are:

(1) Whether payments made to the wife during 1976 pursuant to a written agreement incident to divorce constitute periodic payments deductible by the husband under section 215[1] and includable in income by the wife under section 71(a). Our resolution of this question depends first on whether the agreement fixes any amount or part of the payments as child support under section 71(b) and secondly on the effect, if any, of the wife's remarriage during that year.

(2) Which parent is entitled to the dependency exemptions for their five children under the terms of their written agreement and section 152(e). Decision of this question is closely related to our resolution of the first issue.

### FINDINGS OF FACT

Most of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners Charles R. Blakey and Fay L. Blakey, husband and wife, resided in Alexandria, Va., at the time they filed their petition in docket No. 3085–80. They timely filed their joint Federal income tax return for the year 1976 with the Internal Revenue Service Center in Memphis, Tenn. Petitioner Fay L. Blakey is a party to this proceeding solely because she filed a joint return with her husband, and all further references will be to petitioner Charles R. Blakey (hereinafter Blakey).

Petitioner Sandra A. Bettino (now Sandra A. Bettino Major) resided in Alexandria, Va., at the time she filed her petition in docket No. 4590–80. She and her former husband, Donald L. Bettino, timely filed a joint Federal income tax return for the year 1976 with the Internal Revenue Service Center in Memphis, Tenn. Petitioner Sandra A. Bettino (hereinafter Bettino) was an unmarried individual at the time she filed her

---

[1]All section references are to the Internal Revenue Code of 1954. as amended and in effect during the taxable year here involved, unless otherwise indicated.

petition herein, and her former husband, Donald L. Bettino, is not a party to this proceeding.

Blakey and Bettino were formerly husband and wife. They were married on August 20, 1960, in Halifax County, N.C. Five children were born of their marriage: Charles R. Blakey, Jr., on July 12, 1961; Robert Edward Blakey on August 3, 1962; Russell Sean Blakey on September 25, 1964; Randolph Darin Blakey on January 19, 1967; and Lee Colleen Blakey on May 3, 1968.

On May 5, 1972, Blakey and Bettino (then Sandra A. Blakey) entered into a written marital agreement denominated "Property Settlement Agreement" (1972 agreement) in contemplation of divorce. Paragraph 5 of the 1972 agreement provided that:

It is understood and agreed that * * * any action for divorce between the parties hereto shall be subject to and governed by the terms of this Agreement, and the terms and conditions set forth in this Agreement shall be ratified and affirmed and incorporated in any decree of divorce which may be entered in any action between the parties hereto.

The 1972 agreement disposed of various items of property, gave custody of the parties' five minor children to the wife, and included the following provision for support:

13. The Husband shall pay to the Wife, commencing on the 1st day of June, 1972, for the care, support and maintenance of the minor children of the parties and the support, maintenance and alimony of the Wife, the total monthly sum of $300.00. Said sum shall be payable in the amount of $150.00 on the 1st and 15th day of each month. At such time as the Husband's present loan at the Post Office is paid, this support, maintenance and alimony for the Wife and the minor children of the parties shall be raised to $325.00 per month, payable $150.00 on the 1st day of each month and $175.00 on the 15th day of each month.

The aforesaid monthly sum shall be reduced by one-sixth (⅙th) as each child shall attain the age of eighteen years, dies, or becomes otherwise emancipated (whichever shall first occur), and at such time as the last or youngest child shall attain the age of eighteen years, dies or becomes otherwise emancipated (whichever shall first occur), all support, maintenance and alimony for the Wife and the minor children shall cease completely and no further monies shall be due and owing from the Husband.

The Husband and Wife agree that so long as the Husband, under Internal Revenue Service Regulations and Laws, is able to deduct the entire monthly payments aforementioned on his Federal and State income tax returns, that the Wife shall be able to claim the five children as exemptions on her Federal and State income tax returns. Should the situation change so that the Husband is not able to, under the rules and regulations, deduct the

entire monthly amount from taxable income on his Federal and State income tax returns, then it is agreed hereby that the Wife shall take three (3) of the children as exemptions and the Husband shall take two (2) of the children as exemptions, so long as the support outlined in paragraph 13 remains at the aforementioned level.

In paragraph 3 of the 1972 agreement, the parties agreed to carry out fully the terms and conditions of the agreement. The parties also provided in paragraph 6 that "All covenants, promises, stipulations, agreements and provisions herein contained shall apply to, bind, and be obligatory upon the heirs, executors, administrators, personal representatives and assigns of the parties hereto." The parties further provided in paragraph 20 that the agreement was to be construed in accordance with Virginia law.

On May 10, 1973, Blakey and Bettino (then Sandra A. Blakey) executed an amendment to the 1972 agreement (1973 amendment). The 1973 amendment substituted a new paragraph 13 regarding support of the wife and children but otherwise confirmed, ratified, and incorporated all of the remaining terms, conditions, and provisions of the 1972 agreement. The 1973 amendment made the following changes in paragraph 13: (1) It referred in the first section to the monthly payments as in part for the "support, care and maintenance" of the wife rather than for the "support, maintenance, and alimony" of the wife;[2] (2) it increased the monthly amount of support payable to $350 before repayment of the husband's post office loan and to $375 thereafter; (3) it provided that the husband would be entitled to take dependency exemptions for three of the children rather than two in the event that he was unable to deduct all of his monthly payments; and (4) it added that the husband would be entitled to take dependency exemptions for all of the children if the wife was not employed on a full-time basis.

On June 28, 1973, the Circuit Court of Fairfax County, Va., entered a Decree A Vinculo Matrimonii (divorce decree) divorcing Blakey and Bettino (then Sandra A. Blakey). The Circuit Court "Adjudged, Ordered and Decreed" among other

---

[2]The second section of par. 13 in both the 1972 and 1973 agreements used the phrase "all support, maintenance and alimony for the Wife and the minor children." The change in the first section of par. 13 of the 1973 amendment appears to be without significance.

things, that "the Property Settlement Agreement dated May 5, 1972 and the Amendment to Property Settlement Agreement dated May 10, 1973 be and are hereby ratified, confirmed and approved by this Court."

On July 31, 1975, Blakey and Bettino (then Sandra A. Blakey) executed a second amendment to the 1972 agreement (1975 amendment). Like the 1973 amendment, the 1975 amendment substituted a new paragraph 13 regarding support of the wife and children and confirmed, ratified, and incorporated all of the remaining provisions of the 1972 agreement. The 1975 amendment read as follows:

> The Husband shall pay to the Wife commencing on the first day of September 1975, for the care, support and maintenance of the minor children of the parties and the support, care and maintenance of the Wife, the total monthly sum of $440.00. Said sum shall be payable in the amount of $220.00 on the first and fifteenth day of each month.
>
> The aforesaid monthly sum shall be reduced by one-sixth (1/6) as each child shall attain the age of eighteen (18) years, dies or becomes otherwise emancipated, whichever shall first occur. And at such time as the last or youngest child shall attain the age of eighteen (18) years, dies or becomes otherwise emancipated (whichever shall first occur), all support, maintenance and alimony for the Wife and the minor children shall cease completely and no further monies shall be due and owing from the husband.
>
> The Husband and Wife agree that so long as the Husband under Internal Revenue Service Regulations and Laws is able to deduct the entire monthly payments aforementioned on his Federal and State income tax returns, the Wife shall be able to claim the five children as exemptions on her Federal and State income tax returns. (Should the situation change so that the Husband is not able to, under the Rules and Regulations deduct the entire monthly amount from taxable income on his Federal and State income tax returns, then it is agreed hereby that the Wife shall take two of the children as exemptions and the Husband shall take three of the children as exemptions, so long as the support outlined in this Paragraph remains at the aforementioned level; in the event that the Wife is not employed on a full-time basis, then the Husband shall take all of the children as exemptions.)

Thus, the 1975 amendment tracked the language of the 1973 amendment but increased the monthly amount of support payable by the husband to $440. Unlike the 1973 amendment, however, the 1975 amendment was never acted on by any court.

Blakey and Bettino (then Sandra A. Blakey Major) executed a third amendment to the 1972 agreement dated November 30, 1979 (1979 amendment). The 1979 amendment also substituted a new paragraph 13 and confirmed, ratified, and incorporated

the remaining provisions of the 1972 agreement. The 1979 amendment increased the monthly amount payable by the husband for the "continued care, support and maintenance of the Wife and minor children"[3] to $475. The 1979 amendment still provided that "At such time as the last or youngest child shall attain the age of eighteen (18) years, dies or becomes otherwise emancipated, whichever event shall first occur, all of the support and maintenance for the Wife and minor children shall cease completely and no further monies shall be due and owing from the Husband." On February 29, 1980, the Circuit Court of Fairfax County, Va., entered an order in response to Bettino's motion for an increase in "child support" which expressly "Adjudged, Ordered and Decreed" that the 1979 amendment "is hereby incorporated by reference, and the parties are ordered to fully comply with the terms therein."

During the entire calendar year 1976, Blakey paid Bettino the monthly sum of $440 pursuant to the 1975 amendment. The total amount of such payments during 1976 was $5,280. Throughout 1976, the parties' five children resided with Bettino, were under the age of 18 years, and were not emancipated. Also throughout the year 1976, Bettino was employed on a full-time basis as a secretary with the Arthritis Foundation.

On May 30, 1976, Bettino married Donald L. Bettino. Bettino was married to and lived with Donald L. Bettino from May 30, 1976, through at least December 31, 1976.[4] With respect to the $5,280 that Blakey paid under the agreement during 1976, Bettino received $2,200 before her remarriage on

---

[3]The parties' oldest son, Charles R. Blakey, Jr., was over the age of 18 years when the 1979 amendment was executed. Whereas the 1972 agreement, the 1973 amendment, and the 1975 amendment had each provided that the monthly sum "shall be reduced by one-sixth (1/6) as each child shall attain the age of eighteen (18) years," the 1979 amendment provided that that sum was to be reduced by one-fourth as each child reached 18. In any event, that amendment was executed after the year before the Court, and the provision for reduction of payments has no bearing on our decision in this case. The more important part of the 1979 amendment, for our purposes, is its retention without change of the provision for termination of all payments upon the last or youngest child's reaching age 18, dying, or becoming otherwise emancipated.

[4]Sandra A. Bettino and Donald L. Bettino were divorced sometime between Dec. 31, 1976, and late 1979 or early 1980, when she executed the 1979 amendment with Blakey using the name Sandra A. Blakey Major.

May 30, 1976, and $3,080 thereafter through December 31, 1976.

On his 1976 tax return, Blakey deducted the full $5,280 that he paid to Bettino during 1976 as alimony and did not claim any of their five children as his dependents. On her 1976 tax return, Bettino reported $366 of the payments that she received from Blakey during 1976 as alimony and claimed all of their five children as her dependents. The $366 reported by Bettino as alimony represented one-sixth of the $2,200 paid before her marriage to Donald L. Bettino on May 30, 1976.

In his notices of deficiency, respondent took inconsistent positions in order to protect the revenue and insure consistent treatment of the payments in question. In the notice to Charles R. Blakey and Fay L. Blakey, respondent determined that Blakey's payment of $3,080 to Bettino after her remarriage was not deductible as alimony. In the notice to Sandra A. Bettino and Donald L. Bettino, respondent determined that the full $5,280 received by Bettino from Blakey was includable in her income as alimony. The notice to Bettino set forth an alternate position disallowing dependency exemptions for three of the five children in the event that Blakey's payments to her after her remarriage are determined to be for child support rather than alimony.[5]

## OPINION

Section 215[6] permits a husband to deduct payments made during his taxable year which are includable under section 71 in the gross income of his former wife. Section 71(a)(1)[7]

---

[5]On brief, respondent notes that his alternate position on the dependency exemptions is in error and that Blakey is entitled to all five exemptions if he is not entitled to the alimony deduction for that year under sec. 152(e)(2)(B), as it read for taxable years beginning before Oct. 4, 1976. That is because the custodial parent (Bettino) has not clearly established that she furnished more than half of the support for each child, and the noncustodial parent (Blakey) furnished the statutory minimum amount ($1,200) for all of the children. However, because of our disposition of the other issues, we need not address this matter.

[6]SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment, if by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

[7]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

includes in a wife's gross income periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is incurred by her former husband under a written instrument incident to divorce. Section 71(b)[8] creates an exception to section 71(a)(1) and provides that such payments are excludable from a wife's income to the extent that the instrument or agreement "fixes" a sum of money or a part of the amount which is payable for the support of minor children.

Although respondent issued protective notices of deficiency, his principal concern is that the payments be treated consistently. Both respondent and Blakey argue on brief that the full amount of the payments for 1976 is includable in Bettino's gross income and therefore deductible by Blakey. Bettino argues that only one-sixth of Blakey's payments to her before her remarriage is taxable to her as alimony. Bettino relies on the reduction clause in paragraph 13 of the agreement: she reasons that since the monthly amount of support is reduced by one-sixth as each of the five children reaches 18 years of age, dies, or becomes emancipated, whichever event first occurs, then only the remaining one-sixth of that amount represents alimony to her. She further argues that both the agreement and Virginia law specifically provide that none of Blakey's payments to her after her remarriage constitute alimony and that all of such payments thereafter must be treated as child support.

Before considering the effect, if any, of Bettino's remarriage, we must first decide whether or not the written agreement "fixes" or "specifically designates" any sum or part of the payments as child support within the meaning of section 71(b). The specific question here is whether the written agreement

---

(1) Decree of divorce or separate maintenance.—If a wife is divorced * * * from her husband under a decree of divorce * * * , the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce * * *

[8]SEC. 71(b). Payments to Support Minor Children.—Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.

provides that five-sixths of the monthly support payments is child support and that the remaining one-sixth is alimony. In *Commissioner v. Lester*, 366 U.S. 299 (1961), the Supreme Court dealt with a written agreement containing a support provision practically identical to the instant one. The agreement there provided for periodic payments to the wife for the "support and maintenance of herself and the children." It further provided that the payments would be reduced by one-sixth as each of the three children married, became emancipated, or died. The Commissioner argued that the language sufficiently identified one-half (one-sixth multiplied by three children) of the payments as payable for child support because the payments were to be reduced in a fixed amount on the occurrence of certain events regarding the children.

The Supreme Court held that the written agreement did not "fix" or "expressly specify" any amount as payable for child support and that all of such payments therefore were deductible by the taxpayer-husband as alimony and includable in the wife's gross income. The Supreme Court examined the statutory language and held (366 U.S. at 303–306):

This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment * * *

\* \* \* \* \* \* \*

Here the agreement does not so specifically provide. On the contrary, it calls merely for the payment of certain monies to the wife for the support of herself and the children. * * *

\* \* \* \* \* \* \*

if there is to be certainty in the tax consequences of such agreements the allocations to child support made therein must be "specifically designated" and not left to determination by inference or conjecture.

In the present case, paragraph 13 of the agreement (as amended in 1975) states at the outset that the husband is to pay the total monthly sum of $440 "for the care, support and maintenance of the minor children of the parties and the support, care and maintenance of the Wife." Like the payments under the agreement in *Lester*, the payments under the

agreement here are not severable. There is no language designating or specifying a certain amount of that payment as child support.

Bettino relies, as did the Commissioner in the *Lester* case, on the reduction provision in the agreement as supplying the necessary words of designation. However, the clause in paragraph 13 reducing the monthly payment by one-sixth as each child attains age 18, dies, or becomes otherwise emancipated (whichever first occurs) does not "fix" or "specifically designate" five-sixths of the amount as payable for child support. As in the agreement in *Lester*, the amount of child support in paragraph 13 can only be determined from the reduction clause here by inference or conjecture. That, we are not permitted to do. *Lester* has long been the settled law in this area and is controlling here.

Accordingly, all of the payments received by Bettino under the written agreement are includable in her income under section 71(a)(1) unless her remarriage on May 30, 1976, changed the character of the payments made after that date. Bettino argues that *Lester* does not address the issue of what happens upon remarriage and that Virginia law provides that alimony terminates upon remarriage. We disagree with Bettino's reading of Virginia law and its effect on the periodic payments made pursuant to the written marital agreement in this case. We hold that Bettino's remarriage did not change the nature of those payments as alimony for tax purposes.

The predecessors of sections 71 and 215 were enacted to produce uniformity in the treatment of amounts paid in the nature of alimony regardless of variances in the laws of different States.[9] Section 71(a)(1) makes no reference to alimony, and the characterization given to payments by State law is not controlling in determining their Federal income tax consequences. The basis for characterizing such payments is not the decree or written instrument itself but the "legal obligation" which is made specific by the decree or written instrument. With respect to the question of the existence of a "legal obligation," however, State law is determinative. *Hoffman v. Commissioner*, 54 T.C. 1607, 1610–1611 (1970), affd. per

---

[9]H. Rept. 2333, 77th Cong., 1st Sess. (1942), 1942–2 C.B. 427; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 568. See *Commissioner v. Lester*, 366 U.S. 299, 301–303 (1961).

curiam 455 F.2d 161 (7th Cir. 1972); *Brown v. Commissioner*, 50 T.C. 865, 867–868 (1968), affd. per curiam 415 F.2d 310 (4th Cir. 1969); *Dixon v. Commissioner*, 44 T.C. 709, 714 (1965).

In both *Brown v. Commissioner, supra*, and *Hoffman v. Commissioner, supra*, we held that a husband's payments to the wife after her remarriage were not made in discharge of a "legal obligation" under section 71(a)(1) where the husband's sole liability to make payments was imposed by the divorce decree and where State law provided that alimony was to cease upon the wife's remarriage. In *Brown*, the divorce decree required the husband to make weekly alimony payments to the wife. We held that since the husband's liability for payments was imposed solely by the decree, section 20–110 of the Virginia Code of 1950[10] automatically caused the husband's "legal obligation" for making such payments to cease upon the wife's remarriage. However, we stated that the result might have been different had there been a written agreement. In this regard, we distinguished several cases holding that the husband's obligation to pay alimony continued after the wife's remarriage because the obligation was incurred by him under a written instrument incident to divorce.

*Hoffman v. Commissioner, supra*, involved both a divorce decree and a written agreement. The agreement there was executed shortly before the decree was entered and was incorporated in the decree. The agreement and the decree both required the husband to make identical weekly payments to the wife. However, because Illinois law provided that an agreement incorporated in a divorce decree merged into the decree and had no separate existence, we concluded that the husband's liability to make payments was imposed solely by the decree. Thus, we held that the husband's obligation to pay alimony automatically ceased upon the wife's remarriage pursuant to an Illinois statute that was similar to the Virginia statute in *Brown*. Since Illinois law provided that the agreement had no separate existence apart from the decree, we were not called upon to decide whether the agreement would have caused the husband's obligation to pay alimony to continue after the wife's remarriage. We noted that Illinois

---

[10]Sec. 20–110. Alimony to cease on remarriage.—If any person to whom alimony has been awarded shall thereafter marry, such alimony shall cease as of the date of such marriage.

courts were not bound by agreements regarding alimony and that the parties could not make an agreement contrary to the Illinois statute requiring alimony payments to cease upon the wife's remarriage. 54 T.C. at 1612–1613.

In the present case, Bettino relies on the current version of section 20–110 of the Virginia Code of 1950 which provides (Va. Code sec. 20–110 (1975)):

If any former spouse to whom support and maintenance has been awarded shall thereafter marry, such support and maintenance shall cease as of the date of such remarriage.

This provision applies only to an award of alimony made by the divorce court. However, Blakey incurred his obligation to pay alimony to Bettino under a written property settlement agreement incident to divorce within the meaning of section 71(a)(1). The divorce court's decree did not require Blakey to pay alimony to Bettino but merely "ratified, confirmed and approved" the 1972 agreement and the 1973 amendment.[11] Moreover, the 1975 amendment, which applied to the year before us, never was acted on by any court.

Under Virginia law, a divorce decree that approves a written agreement like the one here, but that does not either incorporate it or order the husband to perform its obligations, does not constitute an award of alimony subject to section 20–110 of the Virginia Code (1975). *Shoosmith v. Scott*, 217 Va. 789, 232 S.E.2d 787 (1977). In such situations, it is the parties' contract and not the divorce decree that imposes the "legal obligation" to pay alimony on the husband. Where such an agreement exists, the divorce court is barred by statute from entering an order regarding alimony except in accordance with the parties' provisions for alimony in their contract.[12]

---

[11]The decree did not incorporate the agreement expressly or by reference and did not order the husband to perform its obligations. Under Virginia law, the difference between an agreement that is confirmed, ratified, and approved by the divorce court and one that is incorporated in the decree can be more than a matter of semantics. However, as our following discussion indicates, we would reach the same result in this case even if the agreement had been incorporated in the decree.

[12]Va. Code sec. 20–109 (1975):

"Changing maintenance and support for a spouse; effect of stipulations as to maintenance and support for a spouse; cessation upon remarriage or death.— Upon petition of either party the court may increase, decrease, or cause to cease, any support and maintenance of the spouse that may thereafter accrue whether the same has been heretofore or hereafter awarded, as the circumstances may make proper; provided, however, if a stipulation or

Even where a Virginia divorce court's decree incorporates such a contract and orders the husband to comply with it, the husband's "legal obligation" to pay alimony is incurred under the contract, and the effect of incorporation is that the divorce court is authorized by statute to use its contempt power to enforce the contract.[13]

Up until 1972, the fact that Virginia Code section 20–109 limited decrees regarding alimony strictly to the terms of the parties' agreement (if there was an agreement) also prevented divorce courts from entering orders eliminating alimony when the wife remarried.[14] In 1972, however, the Virginia legisla-

---

contract signed by the party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee shall be entered except in accordance with that stipulation or contract unless such party raise objection thereto prior to entry of the decree; provided that if any former spouse, for whom provisions for support and maintenance have been made in such stipulation or contract whether entered into heretofore or hereafter, shall thereafter remarry, the court shall, upon such remarriage, order that such support and maintenance for such former spouse shall cease as of the date of such marriage, and upon the death of any such former spouse, the court shall order that no payment shall be made to the estate of such decedent on account of such provisions, unless such stipulation or contract otherwise specifically provides in the event of remarriage or death."

See *Harris v. Harris*, 217 Va. 680, 232 S.E.2d 739 (1977).

[13]Va. Code sec. 20–109.1 (1975):

"Affirmation, ratification and incorporation in decree of agreement between parties.—Any court may affirm, ratify and incorporate in its decree dissolving a marriage or decree of divorce whether from the bond of matrimony or from bed and board, any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children. Where the court affirms, ratifies and incorporates in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree. The provisions of this section shall apply to any decree hereinbefore or hereinafter entered affirming, ratifying and incorporating such agreement as provided herein; provided, however, that if such agreement provides for the maintenance of either of such parties, upon the remarriage of such party the court shall order that no payment shall be made to the estate of such decedent on account of such provision, unless such agreement otherwise specifically provides in the event of remarriage or death."

See *Shoosmith v. Scott*, 217 Va. 789, 232 S.E.2d 787 (1977); *McLoughlin v. McLoughlin*, 211 Va. 365, 177 S.E.2d 781, 783 (1970); *Henebry v. Henebry*, 185 Va. 320, 38 S.E.2d 320, 327 (1946).

[14]In *McLoughlin v. McLoughlin*, 211 Va. 365, 177 S.E.2d 781 (1970), the Supreme Court of Virginia held that support payments could not be eliminated upon remarriage of the wife even though the agreement was incorporated by reference in the decree and the decree ordered the parties to perform its obligations. Such a decree constituted an award of alimony that normally would have ceased on the wife's remarriage under sec. 20–110 of the Virginia Code. However, the court held that any order eliminating alimony upon remarriage would be an order inconsistent with the parties' agreement and thus was

ture amended sections 20–109 and 20–109.1 by adding identical provisions which require the divorce court to order that alimony shall cease upon the wife's remarriage unless the parties' agreement "*otherwise specifically provides in the event of remarriage.*"[15] These amendments provided a statutory interpretation of agreements which are silent on the effect of the wife's remarriage. Nevertheless, it is clear that the parties can provide in their agreement for the continuation of alimony payments after the wife's remarriage.[16] Unlike the situation under Illinois law that we dealt with in *Hoffman v. Commissioner, supra,* such a contract is not in derogation of Virginia law and is expressly permitted by statute.

Since we have concluded that Blakey's legal obligation to pay alimony to Bettino was incurred solely under their agreement, we must decide whether the agreement provided that his obligation continued to exist after her remarriage. There is no language in the agreement regarding the contingency of Bettino's remarriage or the possible effect of such a

---

prohibited by sec. 20–109. Nevertheless, the court stated that its decision did not preclude a proceeding outside of the divorce court to construe the contract in order to determine when the parties intended the support payments to end.

[15]The 1972 amendments added the following provisions to secs. 20–109 and 20–109.1:

Va. Code sec. 20–109 (1972):

"provided that if any former spouse, for whom provisions for support and maintenance have been made in such stipulation or contract whether entered into heretofore or hereafter, shall thereafter remarry, the court shall, upon such remarriage, order that such support and maintenance for such former spouse shall cease as of the date of such marriage, and upon the death of any such former spouse, the court shall order that no payment shall be made to the estate of such decedent on account of such provisions, *unless such stipulation or contract otherwise specifically provides in the event of remarriage or death.* [Emphasis added.]"

Va. Code sec. 20–109.1:

"provided, however, that if such agreement provides for the maintenance of either of such parties, upon the remarriage of such party the court shall order that such maintenance shall cease as of the date of such marriage, and upon the death of such party the court shall order that no payment shall be made to the estate of such decedent on account of such provision, *unless such agreement otherwise specifically provides in the event of remarriage or death.* [Emphasis added.]"

These amendments appear to overrule *McLoughlin v. McLoughlin, supra.* The Virginia Supreme Court has not yet had occasion to apply these 1972 amendments to an agreement like the one here that was entered after the date of their enactment. In *Shoosmith v. Scott, supra,* the Supreme Court of Virginia dealt with an agreement entered into before the 1972 amendments were passed and held that their subsequent enactment could not impair preexisting contractual rights under State and Federal constitutional provisions prohibiting impairment of such contract rights.

[16]A. Phelps, Domestic Relations in Virginia sec. 11–11, at 167 n. 79; sec. 17–6, at 266 n. 31 (3d ed. 1977).

contingency on Blakey's obligation to make payments. However, while the agreement does not mention remarriage, it is not silent as to when the payments to the wife and children shall terminate. Therefore, we must interpret the agreement.[17] *Bardwell v. Commissioner*, 318 F.2d 786, 790 (10th Cir. 1963), affg. 38 T.C. 84 (1962); *Thorsness v. United States*, 260 F.2d 341, 344 (7th Cir. 1958); *Suarez v. Commissioner*, 68 T.C. 857 (1977).

In order to interpret the agreement, we must ascertain the intention of the parties. The parties expressly provided that their agreement was to be construed in accordance with Virginia law. Factors that the Virginia courts have considered in determining the parties' intent include the contract's express language, the parties' purpose, and the parties' subsequent actions relating to the contract. *Short v. A. H. Still Investment Corp.*, 206 Va. 959, 147 S.E.2d 99 (1966); *O'Quinn v. Looney*, 194 Va. 548, 74 S.E.2d 157 (1953); *Hall v. MacLeod*, 191 Va. 665, 62 S.E.2d 42 (1950); *Bott v. Snellenburg & Co.*, 177 Va. 331, 14 S.E.2d 372 (1941).

Paragraph 13 of the agreement (as amended in 1975) provides a specific date for payments to Bettino and the five children to terminate without regard to the date of Bettino's remarriage: "At such time as the last or youngest child shall attain the age of eighteen years, dies or becomes otherwise emancipated (whichever shall first occur), all support, maintenance and alimony for the Wife and the minor children shall cease completely and no further monies shall be due and owing from the Husband." Paragraph 6 of the agreement also made Blakey's obligation to make monthly payments binding and obligatory on his heirs. A holding here that Blakey's obligation to make payments to Bettino ceased upon her remarriage would conflict with these express provisions in the agreement that expressly impose the obligation on Blakey's heirs and that end the obligation only on the majority, death, or emancipation of the last or youngest child.

Paragraph 13 also shows that the parties bargained that

---

[17]This construction is necessary whether or not Virginia Code secs. 20–109 and 20–109.1 are applicable to the 1975 amendment in this case. In either event, we would reach the same conclusion that the agreement specifically provided that payments would not cease on Bettino's remarriage.

Bettino was entitled to claim the five children as exemptions on her tax return so long as Blakey was able to deduct all of his payments to Bettino and the children on his tax return. The parties clearly drafted the support clause in the agreement in the light of *Commissioner v. Lester, supra*, and thereby shifted the tax burden of those payments to Bettino. Bettino's argument that her remarriage automatically converted all of Blakey's payments to child support is contrary to the *Lester* case and to Virginia case law. In *Wickham v. Wickham*, 215 Va. 694, 213 S.E.2d 750 (1975), the Virginia Supreme Court refused to apportion a unitary amount payable for alimony and child support and stated that it would increase child support only by increasing the total amount payable so as not to disturb its *Lester* characterization.[18]

Other than Bettino's failure to report $4,914 ($5,280 − $366) of the payments from Blakey as income on her 1976 tax return, the parties' actions show that the parties complied with their agreement. Blakey continued to make the full monthly support payments after Bettino's remarriage, and he did not seek a court order reducing those payments after that date. On his 1976 tax return, Blakey deducted all of his support payments as alimony and did not claim any of his five children by Bettino as dependents. Bettino claimed all five of her children by Blakey as dependents on her 1976 tax return. Moreover, when the parties later executed the 1979 amendment to their agreement, they left the provision regarding termination of payments in paragraph 13 substantially unchanged.

Based on the express language of the agreement, the bargain between the parties, and the subsequent actions of the parties, we conclude that the parties intended Blakey's obligation to make payments to Bettino to continue without regard to her remarriage and to end only on the majority, death, or emancipation of the last or youngest child. Therefore, in view of our decision on the character of the payments under *Commissioner v. Lester, supra*, we hold that all of the payments during 1976 under the agreement are deductible by Blakey and includable in income by Bettino.

---

[18]See A. Phelps, *supra*, sec. 23–18, at 451 n. 58.

Due to our disposition of the alimony issue, we need not address the question of the allocation of the dependency exemptions for the five children.[19] Since we have held that Blakey is entitled to deduct all of his support payments, Bettino is entitled to dependency exemptions for all five of the children that she claimed on her 1976 tax return in accordance with paragraph 13 of the parties' agreement.

*Decision will be entered for the petitioners in docket No. 3085–80.*

*Decision will be entered for the respondent in docket No. 4590–80.*

---

[19]Neither Blakey nor respondent argues that Blakey is entitled to any dependency exemptions for his five children by Bettino in the event we hold that he is entitled to deduct all of his support payments as alimony.