KENNETH ENGELHARDT AND ROBERTA ENGELHARDT, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6262–70. Filed July 18, 1972.

*Marie L. Garibaldi*, for the petitioners.
*John P. Reis, Jr.*, for the respondent.

### OPINION

DAWSON, *Judge:* Respondent determined the following deficiencies in petitioners' Federal income taxes:

| Year | Deficiency |
| --- | --- |
| 1965 | $305.36 |
| 1966 | 244.26 |
| 1967 | 6,766.56 |
| 1968 | 3,862.49 |

Petitioners have conceded that they received additional dividend income during the years 1965 and 1966 in the respective amounts of $610.72 and $542. The parties have also agreed to the allowance or disallowance of certain claimed dependency exemptions in accordance with the disposition of the litigated issue herein.

The issue to be decided is whether certain payments received by Roberta Engelhardt during the calendar years 1965, 1966, 1967, and 1968 from her former husband, E. Earl Doyne, are includable in her

gross income for those years as alimony under section 71, I.R.C. 1954.[1]

All of the facts are stipulated. The stipulation of facts and supplemental stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings. To the extent deemed pertinent the facts are summarized below.

Kenneth Engelhardt and Roberta Engelhardt (herein called Roberta) are husband and wife who were legal residents of Tenafly, N.J., at the time they filed their petition in this proceeding. Their joint Federal income tax returns for the years 1965, 1966, 1967, and 1968 were filed with the district director of internal revenue at Newark, N.J.

On June 19, 1949, Roberta and E. Earl Doyne (herein called Doyne) were married. Three children were born during their marriage: Peter Doyne, born June 18, 1951, Nancy Doyne, born December 23, 1952, and Elizabeth Doyne, born May 25, 1956. During this marriage Roberta and Doyne were residents of New Jersey, and they and their children have continued to reside in New Jersey since the termination of their marriage.

On March 15, 1961, Roberta and Doyne entered into a written separation agreement. Paragraph 18 of that agreement provides in pertinent part:

In the event that either of the parties shall recover a final judgment or decree of absolute divorce against the other in a court of competent jurisdiction, the provisions of this agreement may be incorporated by reference or in substance but shall not be deemed merged into such judgment or decree, and this agreement shall survive any such final judgment or decree of absolute divorce and shall be entirely independent thereof.

Roberta and Doyne thereafter secured a divorce on May 8, 1961, from the State of Chihuahua, Republic of Mexico. The decree of divorce obtained in Mexico provides that the separation agreement entered into between the parties is approved, confirmed, and ratified and incorporated in its entirety by reference into the decree. It further provides that the agreement is not merged into the decree and shall survive the decree.

Under the terms of the separation agreement here involved, Doyne agreed to provide Roberta with the total unallocated sum of $385 per week, commencing March 1, 1961, for her support and the support of their three minor children. Upon the death of Roberta all payments for her support were to terminate. Upon the death of Doyne, the sum of $385 per week was to be reduced to $290 per week. In the event Roberta should remarry, the weekly payments were to be similarly

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

reduced to $290. Also, should any of the three children die or marry or attain the age of 21 years, whichever event should occur first, then the weekly payment provided was to be reduced $80 per week for each child. Exclusive custody over the three children was given to Roberta under the agreement.

On March 1, 1964, Roberta was married to Kenneth Engelhardt in Tenafly, N.J. Prior to that date Doyne had also remarried. Upon Roberta's remarriage, Doyne reduced his weekly payments under the agreement to $290. In November 1967, over Roberta's objections, Peter Doyne, then age 16, went to live with his father. In September 1968, over similar objections, Nancy Doyne, then age 15, also went to live with her father. After Peter Doyne came to live with him, Doyne reduced his weekly payments under the agreement to $205. Doyne thereafter reduced his weekly payments to $155 per week until Nancy went to live with him. After Nancy came to live with him, Doyne reduced his weekly payments to $77.50. Thus, during the years 1965 through 1968, Doyne made the following payments to Roberta under their agreement:

| Year | Weekly payments | Annual payments |
|------|-----------------|-----------------|
| 1965 | $290 for 52 weeks | $15,080 |
| 1966 | $290 for 52 weeks | 15,080 |
| 1967 | $290 for 50 weeks and $205 for 2 weeks | 14,910 |
| 1968 | $205 for 15 weeks, $155 for 21 weeks, and $77.50 for 16 weeks | 7,570 |

In addition to the provisions previously mentioned, the separation agreement between Roberta and Doyne also includes a proviso that the agreement shall be interpreted, construed, and enforced under the laws of New Jersey. It further provides that Doyne will not seek or institute any proceedings for the purpose of obtaining any change in the terms and provisions of the agreement.

On January 2, 1968, Doyne instituted an action against Roberta in the Superior Court of New Jersey, Chancery Division, Bergen County, in which he requested that custody of Peter Doyne be awarded to him; that the court fix the amount which he was required to pay for the support and maintenance of the two children then residing with Roberta; and that any provisions for alimony to be paid to Roberta upon her remarriage be exscinded and made effective as of the date of her remarriage. After Nancy Doyne came to live with him, Doyne amended his complaint to also request custody of Nancy, and asked the court to fix the amount which he was required to pay for the support of the one minor child still residing with Roberta. The Superior Court, Chancery Division, entered a preliminary order on May 16, 1968, directing Doyne to pay to Roberta $210 per week for the support and mainte-

nance of Nancy and Elizabeth, retroactive to the date when such payments were reduced to $155 per week.

A final order was entered in this case on March 21, 1969. In addition to ordering Doyne to pay $80 per week for the support of Elizabeth, the remaining minor child in the custody of Roberta, the order provided:

It is FURTHER ORDERED that the plaintiff need not continue to pay to the defendant the sum of $50 per week, being an unallocated payment under the provisions of the agreement of March 15, 1961; and

It is FURTHER ORDERED that the amounts which the plaintiff has paid to the defendant subsequent to the date of her remarriage, except for the amount referred to in the preceding paragraph, and the sums which he hereafter will pay in accordance with the provisions hereof, shall be considered as child support;

It is the position of the petitioners that under the applicable New Jersey law the unallocated sums received by Roberta from Doyne during 1965, 1966, 1967, and 1968, under the terms of their separation agreement were not made pursuant to any legal obligation and are therefore not includable in petitioners' gross income for those years under section 71(a)(1).[2] Petitioners further argue such payments are not includable in their gross income under section 71(a)(2) [3] since that section applies only to periodic payments made by a husband to his wife under a separation agreement executed when the parties did not contemplate a divorce or a separation under a decree of separate maintenance.

Respondent, on the other hand, urges that the payments in question were made pursuant to a written separation agreement under which periodic payments were made because of the marital or family relationship and are thus includable in petitioners' gross income for the periods in question under section 71(a)(2), whether or not the agreement is an instrument enforceable in a court of law. Respondent asserts in the alternative that such payments are includable in petitioners'

---

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[3] SEC. 71(a). GENERAL RULE.—

(2) WRITTEN SEPARATION AGREEMENT.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

gross income under section 71(a)(1). Respondent also contends that the order entered by the New Jersey Superior Court, Chancery Division, on March 21, 1969, should not be construed as an effective *nunc pro tunc* decree so as to retroactively designate the payments herein as child support payments as of the date of Roberta's remarriage.

We will deal first with respondent's primary contention that the payments in issue are includable in petitioners' gross income under section 71(a)(2). This provision was introduced into the tax law with the enactment of the Internal Revenue Code of 1954. According to both the House and Senate committee reports,[4] the rationale for adding this section was to extend the tax treatment accorded husbands and wives for periodic payments made pursuant to a legal obligation imposed by a court decree or by a written instrument incident to a decree to situations where such payments are made under a written separation agreement between parties not separated under a court decree, but living apart and not filing a joint return for the taxable year. The House Ways and Means Committee report, in its detailed discussion of the technical provisions of the bill (H.R. 8300), provides at pages A20–A21:

*Section 71. Alimony and separate maintenance payments*

Except for subsection (a)(2), section 71 corresponds to section 22(k) of the 1939 Code, which has been restated for purposes of clarity. No substantive change is made (except for the change made in subsection (a)(2) and the changes conforming thereto). Section 22(k) provided that there be included in the wife's gross income periodic payments received from her husband subsequent to a decree of divorce or separate maintenance if such payments are received in discharge of a legal obligation imposed on the husband under the decree or under a written instrument incident to the divorce or separation.

The bill extends existing law to provide that there shall also be included in the wife's gross income periodic payments received from her husband subsequent to a written separation agreement (whenever entered into) if such payments are made pursuant to the terms of such agreement and because of the marital or family relationship. *The periodic payments received under such agreement are includible in the wife's gross income whether or not the agreement is an instrument enforceable in a court of law.* The provision does not apply where the husband and wife file a joint return. [Emphasis added.]

The Senate Finance Committee's detailed discussion of the bill adds the following at page 171 of its report:

Subsection (a)(2) of the House bill extends the principles of section 22(k) to provide that there shall also be included in the wife's gross income periodic payments received from her husband subsequent to a written separation agreement if such payments are made pursuant to the terms of such agreement and because of the marital or family relationship. The periodic payments received under such agreement are includible in the wife's gross income whether or not

---

[4] See H. Rept. No. 1337, 83d Cong., 2d Sess., p. 9 (1954), and S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 10–11 (1954).

the agreement is an instrument enforceable in a court of law. This provision, however, does not apply if the husband and wife file a single return jointly.

Under the House bill subsection (a) (2) was applicable to payments under agreements entered into in the past. Your committee's amendment would apply the subsection only to payments under agreements executed after the date of enactment of the bill.

Your committee has also added subsection (a) (3) to provide for the inclusion in the wife's gross income of periodic payments (whether or not made at regular intervals) received under a court decree (entered after the date of enactment of the bill) which requires the husband to make the payments for the support or maintenance of the wife. Subsection (a) (3) is applicable only if the wife is separated from her husband, but such separation need not be under a decree nor need the payments be made to enforce a written separation agreement. This paragraph also is not applicable if the husband and wife make a single return jointly.

The clear legislative intent expressed in these committee reports has been effectively incorporated into section 71(a)(2).[5] The broad wording of this provision in no way precludes its application to support payments made subsequent to divorce, pursuant to a written separation agreement expressly surviving the decree of divorce.[6] Also, the absence of the requirement that periodic payments be made in discharge of a legal obligation, present in section 71(a)(1), and the statements regarding this element by both congressional committees set out above, indicate that section 71(a)(2) was intended to, and indeed does, apply notwithstanding the unenforceability of the separation agreement under local law.[7] Accordingly, we hold that the payments in issue are covered by section 71(a)(2).

Our reading of this section appears to comport with the general purpose of section 71 in imposing upon the person who actually receives and enjoys the use of the income the obligation of paying the taxes on that income. *Cox* v. *Commissioner*, 176 F. 2d 226 (C.A. 3, 1949) ; *Lerner* v. *Commissioner*, 195 F. 2d 296, 298 (C.A. 2, 1952) ; *MacFadden* v. *Commissioner*, 250 F. 2d 545 (C.A. 3, 1957), certiorari denied 356 U.S. 968 (1958) ; *Bardwell* v. *Commissioner*, 318 F. 2d 786, 789 (C.A. 10, 1963) ; S. Rept. No. 1631, 77th Cong., 2d Sess., p. 83 (1942) ; H. Rept.

[5] See sec 1.71–1(b)(2)(i), Income Tax Regs. Although we reach the conclusion herein without any special reliance upon this regulation, it should be noted that a regulation not clearly inconsistent with the statute should be upheld. *Maryland Casualty Co.* v. *United States,* 251 U.S. 342, 349 (1920) ; *Commissioner* v. *South Texas Co.,* 333 U.S. 496 (1948). Additionally, where a regulation incorporates the clear purpose of Congress, expressed in its committee reports, it is proper to rely on such statements. *Commissioner* v. *Bilder,* 369 U.S. 499 (1962). Cf. *Florence Korman,* 36 T.C. 654. 657 (1961).

[6] To hold that once a divorce has occurred sec. 71(a)(2) becomes inoperative and all payments thereafter must be exclusively tested by the standards of sec. 71(a)(1) could upset the intended tax consequences worked out by the parties and incorporated in their predivorce separation agreement expressly worded to survive any decree of divorce subsequently obtained. Cf. S. Rept. No. 1622, *supra* at p. 10.

[7] See Note, "Federal Income Taxation of Support Payments Under Postdivorce Original Agreements," 69 Yale L.J. 153, 162–165 (1959) ; and 5 Mertens, Law of Federal Income Taxation, sec. 31A.02c (Malone rev. 1969).

No. 2333, 77th Cong., 2d Sess., p. 71 (1942). To conclude otherwise would, in our judgment, frustrate the clearly expressed desire of Congress to extend the perimeters of section 71 to afford some relief to those shouldering the burden of making support and separate maintenance payments. As we said in *Randal W. Clark, Jr.*, 58 T.C. 519, 523 (1972):

> The law is well settled that payments are deductible if made after divorce and pursuant to an agreement incident to divorce even though State law does not permit the alimony provision to be incorporated in the divorce decree. *Thomas E. Hogg*, 13 T.C. 361 (1949); *Tuckie G. Hesse*, 7 T.C. 700 (1946). And the fact that an agreement may not be enforceable under State law does not affect the deduction if the payments are for the support of the wife. *Taylor v. Campbell*, 335 F. 2d 841 (C.A. 5, 1964); *Scofield* v. *Greer*, 185 F. 2d 551 (C.A. 5, 1950); *Charles Campbell*, 15 T.C. 355 (1950). In the *Taylor* case the Court of Appeals held that certain payments made by the husband to his former wife were for support notwithstanding the fact that there is no legal obligation to pay permanent alimony in Texas. Congress intended that amounts paid as alimony should be treated uniformly regardless of the variance in State laws concerning the existence and continuance of the obligation to pay alimony. *Tuckie G. Hesse, supra;* H. Rept. No. 2333, 77th Cong., 2d Sess., 1942–2 C.B. 427; S. Rept. No. 1631, 77th Cong., 2d Sess., 1942–2 C.B. 568.

Petitioners argue that section 71(a)(2) is not applicable to the payments in question. They claim this provision was added for the limited purpose of permitting a husband to deduct periodic payments made to his wife under a written separation agreement even though they are neither divorced nor living apart pursuant to a decree of separate maintenance. Petitioners also urge that since the separation agreement executed by Roberta and Doyne was "incident to" their divorce, section 71(a)(1) is determinative with respect to the taxability of any periodic payments made by Doyne to Roberta.

Neither position is persuasive. In the first instance, petitioners seek to restrict the applicability of section 71(a)(2) to the limited situation referred to in the general explanation of the congressional committee reports dealing with this section. They make no attempt to demonstrate that the more specific comments contained in the detailed discussions of the bill in each of the committee reports are inappropriate to the situation under consideration here. Petitioners have similarly failed to indicate any rationale to support their argument that because the separation agreement was "incident to" the divorce obtained by Roberta and Doyne, the exclusive statutory provision applicable is section 71(a)(1). Their brief on this point merely reviews numerous cases in which separation agreements were found to be "incident to" divorce and thus covered by section 22(k) of the 1939 Code which is substantially identical to section 71(a)(1). These

cases were decided prior to the enactment of section 71(a)(2) and afford us little assistance in resolving this question.[8]

Since we have concluded that the payments herein are governed by the provisions of section 71(a)(2) in determining whether they are includable in petitioners' income, it is unnecessary for us to consider whether such payments were made in discharge of a legal obligation under New Jersey law, as required by section 71(a)(1). See and compare *Martha K. Brown*, 50 T.C. 865 (1968), affirmed per curiam 415 F. 2d 310 (C.A. 4, 1969); *Allen Hoffman*, 54 T.C. 1607 (1970), affirmed per curiam 455 F. 2d 161 (C.A. 7, 1972). Nor is it necessary for us to determine whether this separation agreement was an independently enforceable contract under the laws of New Jersey in reaching our decision.

Having concluded that section 71(a)(2) is controlling, we must next consider whether the payments made by Doyne to Roberta during 1965, 1966, 1967, and 1968 were unallocated sums includable in petitioners' income under the decision in *Commissioner* v. *Lester*, 366 U.S. 299 (1961). Paragraph 3 of the separation agreement under consideration provides that the husband agrees to pay the wife for her support and maintenance and as alimony for the wife and for the care, support, and maintenance of their infant children, the total unallocated sum of $385 per week. Paragraph 3(e) provides that if the wife remarries alimony payments shall be reduced to $290 per week. Paragraph 3(f) provides that these amounts shall be reduced by $80 per week as each minor child attains the age of 21 years, marries, or dies.

On January 2, 1968, as previously indicated, Doyne instituted suit in the Superior Court of New Jersey, Chancery Division, Bergen County. In his complaint he requested the court to fix the amount of support he should be required to pay for the maintenance of his minor children in Roberta's custody and that any provision for the payment of alimony to Roberta be exscinded, effective as of the date of her remarriage. Roberta, by way of counterclaim, requested that all sums payable to her for the support of her minor children be designated as child support. In an order dated May 16, 1968, the court directed Doyne to pay Roberta the sum of $210 per week for the support and maintenance of their two minor daughters, retro-

---

[8] It has been suggested that whether periodic payments are made under a written separation agreement, incident to divorce, in discharge of a legal obligation, are questions which are largely academic under sec. 71(a)(2). See Frisch, "Divorce and Separation Tax Techniques," 20th Ann. N.Y.U. Tax. Inst. 35, 38 (1962); Daniels, "Divorce and Separation: An Analysis of Wide Range of Related Problems," 30 J. Taxation 254 (April 1969).

active to the date Doyne reduced his payments to $155 per week. In its final order dated March 21, 1969, the court ordered additional deficiencies in child support to be paid and directed Doyne to pay $80 per week for the support of one minor daughter still in Roberta's custody.

The court also decreed that Doyne was no longer required to pay the unallocated sum of $50 per week to Roberta under the terms of their separation agreement. It was further ordered that the amounts which Doyne had paid to Roberta subsequent to the date of her remarriage (except for the $50 per week unallocated sum referred to in the preceding sentence) and the sums which he will pay in accordance with the provisions of the court's order, shall be considered as child support.

Notwithstanding the provisions of the New Jersey court's order, the Federal income tax consequences of Doyne's payments made prior to May 16, 1968, are governed by the written instrument under which they were made, and judicial reformation cannot operate to alter those Federal tax consequences. *Van Den Wymelenberg* v. *United States*, 397 F. 2d 443 (C.A. 7, 1968) ; *Peter Van Vlaanderen*, 10 T.C. 706 (1948), affd. 175 F. 2d 389 (C.A. 3, 1949) ; *Robert L. Daine*, 9 T.C. 47 (1947), affd. 168 F. 2d 449 (C.A. 2, 1948) ; *Michel M. Segal*, 36 T.C. 148 (1961) ; *Dorothy Turkoglu*, 36 T.C. 552 (1961).[9] Thus, the payments made by Doyne to Roberta, pursuant to their separation agreement, during the years 1965, 1966, 1967, and part of the year 1968, are unaffected by the New Jersey court's order. However, payments made by Doyne after May 16, 1968, pursuant to the court's order directing him to pay $210 per week for the support and maintenance of his two minor daughters constitute a separate and distinct matter. The payments made by Doyne after such date were made in compliance with the Superior Court's order [10] and were not made under the separation agreement of March 15, 1961. Therefore, after May 16, 1968, all payments made by Doyne were specifically for child

---

[9] We are not presented here with the situation where a court has retroactively reformed an agreement to conform with the original intent of that court. See *Gloria P. Johnson*, 45 T.C. 530 (1966).

[10] That court was without authority to order Doyne to furnish other than child support to Roberta. See N.J. Stat. Ann. sec. 2A :34–25 which provides as follows :

Remarriage of former wife ; no order touching alimony ; vacation of prior order

If after the judgment of divorce the wife shall remarry, the court shall not make any order as to the alimony of such wife except that upon application of the former husband, on notice and on proof of the marriage of the former wife after the judgment of divorce, the court shall modify any order or judgment as to the alimony of the former wife by vacating and annulling any and all provisions in any such order or judgment, or both, directing the payment of money for the support of the former wife.

support and are not includable in petitioners' gross income under section 71(b). *Commissioner* v. *Lester, supra; Cleveland J. Harris*, 51 T.C. 980 (1969), acq. 1969–2 C.B. xxiv; sec. 1.71–1(e), Income Tax Regs.

To reflect various concessions and agreements of the parties and our conclusions herein,

*Decision will be entered under Rule 50.*