CARL GEORGE LOVE AND BARBARA MCININCH LOVE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CHARLOTTE ANN LOVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Love v. Commissioner
Docket Nos. 3723-83, 6329-83.
United States Tax Court
T.C. Memo 1984-641; 1984 Tax Ct. Memo LEXIS 34; 49 T.C.M. (CCH) 274; T.C.M. (RIA) 84641; December 10, 1984. Carl George Love and Barbara McIninch Love, pro se. Charlotte Ann Love, pro se. Dahil D. Goss, for the respondent. TANNENWALD MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Addition to Tax
Docket No.
Year
Deficiency
[1] Sec. 6653(a) 3723-83
1979
$4,494.50
1980
4,930.00
6329-83
1979
2,916.00
$145.00
1980
2,752.44
137.62
The sole issues for our consideration are: (1) whether certain payments made to a former spouse are properly includable as income by the recipient under section 71(a), [2] and (2) whether respondent properly imposed the *36 section 6653(a) addition to tax for negligence or intentional disregard of rules and regulations for such years. FINDINGS OF FACT Some of the facts have been stipulated and are so found; this reference incorporates the stipulations of facts and attached exhibits. [3]
At the time they filed their *37 petitions in this case, petitioners Carl George Love (Carl) and Barbara McIninch Love [4] resided in McLean, Virginia, and petitioner Charlotte Ann Love (Charlotte) resided in Oakton, Virginia. Petitioners timely filed their respective Federal income tax returns for 1979 and 1980. Carl and Charlotte were married on January 20, 1962. They had two children during this marriage--John, born October 2, 1964 and Sharon, Born February 24, 1966--and Charlotte adopted Carl's two children from a previous marriage. Carl and Charlotte were divorced in Las Vegas on August 5, 1968 and remarried to each other in Maryland on December 30, 1968, and were separated on August 21, 1971. On various dates between October 11 and October 15, 1971, Carl and Charlotte signed a separation agreement dated October 7, 1971 (the Agreement). [5] The Agreement assigned custody of the children and required Carl to make payments to Charlotte for the support and maintenance of herself and the children, providing, in pertinent part: 6. The Husband *38 shall pay to the Wife as support and maintenance for herself and for the minor children of the parties and for JOHN EDWARD LOVE and SHARON ELIZABETH LOVE, two of the minor children of the parties, the sum of $925.00 per month payable in semi-monthly installments, beginning October 15, 1971 and continuing until such time as the real property, held in the joint names of the parties located in Bay Ridge, Annapolis, Maryland, shall be sold as hereinafter provided. And after the sale and settlement of said real estate and beginning on the first day of the month following the settlement or sale of such property, the Husband shall thereafter pay to the Wife as support and maintenance for herself and the said two minor children of the parties, the sum of $875.00 per month. Said payments shall be in full and complete satisfaction of any present or future claim or right of the Wife to have alimony, support, maintenance, or other compensation from the Husband and the Wife further agrees that upon the remarriage of the Wife, the Husband shall only be obligated to pay thereafter only one-quarter of the aforesaid sum per month as support for each of the said two minor children of the parties until *39 each such child shall reach the age of 21, become self-supporting, married, in the military service, or otherwise emancipated, whichever event occurs first. The Wife recognizes that she has a joint and several responsibility with the Husband for the support of all four of their children, but the parties hereto agree that the Wife shall make no financial contribution towards the support of the children, VICTORIA ANN LOVE and DOUGLAS WILLIAM LOVE. * * * 9. Nothing contained herein shall be deemed to prevent either of the parties from maintaining a suit for absolute divorce against the other in any jurisdiction based upon any past or future conduct of the other, nor to bar the other from defending any such suit. In the event that such action is instituted, the parties shall be bound by all the terms of this agreement. If consistent with the rules or practice of the Court granting a decree of absolute divorce, the provisions of this agreement shall be incorporated in such decree, but, notwithstanding such incorporation, this agreement shall not be merged in such decree, but shall in all respects survive the same and be forever binding and conclusive upon the parties. *40 * * * 16. The Wife agrees that in the event she defaults in any payments required of her, under this agreement or otherwise or in any respect breaches the terms of this agreement so that the Husband becomes obligated to any third-party for the payment of debts or obligations which are properly the responsibility of the Wife under the terms of this agreement, the Husband shall be and he is hereby authorized to make such payments on behalf of the Wife and deduct the amount of such payments from the next payments due for support and maintenance, provided by paragraph 6 of this agreement. 17. This agreement contains the entire understanding of the parties and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein. * * * 19. No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed with the same formality as this agreement. *41 The parties were divorced on May 2, 1972 in the Dominican Republic, Charlotte appearing in person and Carl by attorney in fact. The divorce decree approved the separation agreement and expressly recognized that Charlotte "renounces any alimony, except as set forth in the separation agreement." (Emphasis added.) A July 13, 1978 amendment to the support provisions of the Agreement reads as follows: AMENDMENT TO AGREEMENT OF OCTOBER 7, 1971
Whereas certain disputes have arisen between the former Husband, Carl G. Love, and the former Wife, Charlotte Ann Love, as to the Separation Agreement made the 7th day of October 1971 as to the support payments provided in paragraph 6 thereof, and both parties desire to amicably resolve such disputes. Now Therefore, in consideration of the mutual promises set forth below, it is hereby agreed as follows: A. The said paragraph 6 of said Agreement shall now be amended so that the entire portion following the first two sentences thereof shall be changed to read as follows: "However, such support payments shall be increased to $1,200.00 per month for the twenty-four month period of July 1978 through June 1980, and shall *42 thereafter return to the level of $875.00 per month. Said payments shall be in full and complete satisfaction of any present or future claim or right of the Wife to have alimony support, maintenance or any other compensation from the Husband. The Wife further agrees that upon the remarriage of the Wife, the Husband shall be obligated to pay thereafter only one-half of the aforesaid payments per month which would otherwise be made. Such payments are to be made until each such child shall reach the age of 21, or become self-supporting, married, in the military service, or otherwise emancipated whichever event occurs first. The Wife recognizes that she has joint and several responsibility with the Husband for the support of the said two minor children John and Sharon, and the parties agree that the Wife shall make no financial contribution towards the support of the children Victoria Ann Love and Douglas William Love. The Wife further agrees as part of her said responsibility that at such time as John Edward and/or Sharon Elisabeth Love are attending college, she shall then be responsible for the first $1,500.00 per year of the college tuition, fees, dormitory, meal and textbook *43 expenses per child for a maximum of three years per child, which sum may be paid directly by the Husband to the attended college and deducted by him on a pro rata monthly basis from the support payments otherwise provided for in this paragraph, and the Husband agrees in return to be responsible for the remainder of the children's college tuition, fees, dormitory, meal and textbook expenses during the period of their college education, provided, however, that the Husband approves the choice of the college(s) attended." B. This foregoing amendment to said paragraph 6 is made coincident with the Wife's removal of her residence, and consequently that of John and Sharon, from San Antonio, Texas to Duncanville, Texas. The former Wife Charlotte Ann Love now further agrees that in the event any later change of such residence is made during the minority of the children John and Sharon to a location outside of the Dallas, Texas area (defined as a fifty-mile radius from the center of Dallas), and such change of residence is not to a location in the Washington, D.C. area (defined as a fifty-mile radius from the center of Washington, D.C.), then the obligation of the former Husband *44 Carl G. Love to make the monthly support payments as otherwise provided in said paragraph 6, as amended herein, shall be reduced to one-half of the otherwise stated applicable amount. As witnessed by our signatures below, on the date indicated, we hereby agree to the terms and provisions of this Amendment to Agreement of October 7, 1971, which shall henceforth be and become a part of said Agreement. After various custody and other proceedings, on March 20, 1980, Charlotte began what was to be a lengthy series of court proceedings concerning support by petitioning the Fairfax County (Virginia) Juvenile and Domestic Relations Court for a determination of the proper amount of child support. By order dated April 30, 1980, Judge Fortkort of that court found appropriate "an increase in the support set forth in the parties' Property Settlement Agreement of October 7, 1971 and subsequent amendment thereto." The order raised the amount of the required payments beginning July 1, 1980 -- set by the 1978 amendment at $875 per month -- to $1,000 per month, payable through the court. Charlotte next filed a Bill of Complaint for Divorce on May 30, 1980 in the Fairfax County (Virginia) *45 Circuit Court. She requested a final decree of divorce, "custody of the parties' two minor children, support for them, pendente lite and permanently, [and] alimony (spousal support) pendente lite and permanently * * *." Judge Jamborsky, after a hearing before Commissioner West at which Charlotte had argued that both the Dominican Republic divorce and the Agreement were invalid, noted that the "bilateral divorce in the Dominican Republic effective as of May 2, 1972" and the "Separation Agreement having an effective date of October 7, 1971, executed first on October 11, 1971 and then, identically again on October 12 and 15, 1972 [sic], as well as * * * a subsequent valid Amendment thereto executed July 7 and 13, 1978" appeared to the court to be valid, enforceable, and relied upon by the parties. In an order dated November 12, 1981, Judge Jamborsky granted the divorce "to remove any question which might otherwise be raised regarding the Dominican Republic Decree of Divorce," affirmed, ratified, and incorporated the Agreement, and increased the support payments as follows-- the obligations of the defendant Carl George Love for support and maintenance of [Charlotte] *46 and of the said minor children are as set forth in the said Agreement and Amendment, to wit the intended unallocated sum for so much of their college education expenses * * * as is in excess of $1,500 for each college year for the first three years * * *, plus the total sum of $437.50 per month until such time as each child receives his or her college degree or leaves college or reaches the age of 21, or becomes self-supporting, married, enters the military service, or is otherwise emancipated, whichever event occurs first * * *. The Supreme Court of Virginia, on December 22, 1982, found no reversible error in the decree of Judge Jamborsky. Meanwhile, on July 17, 1981, Charlotte petitioned the Juvenile and Domestic Relations Court for an Order to Amend Judge Fortkort's April 30, 1980 order. On July 22, 1981, Judge Brophy of that court disapproved of the "child support aspects" of the Agreement and ordered "that beginning August 1, 1981, the monthly child support will be increased from $1,000.00 per month to $1,600.00 per month for nine months, and then revert to $1,000.00 payable through the Court." [6]
*47 Pursuant to the Agreement, amendment, and court orders, Carl made the following payments to Charlotte in 1979 and 1980: $1,200 each month from January 1979 through June 1980, and $1,000 each month thereafter through December 1980. Except for a $435 payment in February 1979, [7] each of the checks was made payable to nthe order of Charlotte. [8] Thus, Carl made payments to Charlotte totaling $14,400 in 1979 and $13,200 in 1980. On their Federal income tax returns for these years, Charlotte included as income from alimony received $5,250 for 1979 and $3,340 for 1980, [9] and Carl deducted as alimony paid $14,400 for 1979 and $13,200 for 1980. *48 On April 26, 1982, Charlotte filed a petition in bankruptcy under chapter 7 of the Bankruptcy Code in the Eastern District of Virginia. That court issued an order on May 7, 1982 giving notice of an automatic stay and setting the first creditors' meeting for May 27, 1982. On October 5, 1982, the court ordered a discharge of Charlotte's dischargeable debts, and on October 21, 1983, the court closed the estate. Respondent issued statutory deficiency notices to Carl and to Charlotte on December 23, 1982. Acknowledging that his positions as to Carl and Charlotte are inconsistent, i.e., the payments cannot be both includable in Charlotte's income and nondeductible by Carl, respondent assumes the position of a stakeholder in these proceedings; on brief he supports Carl's position. OPINION At issue here is the includability of Carl's payments under section 71, which, as in effect for 1979 and 1980, provides that the recipient's gross income generally includes the payments if they were made under a divorce decree, written agreement incident to a divorce, written separation agreement, or support decree. [10] Section 71(b), however, states that the above rule "shall *49 not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband." If, as Carl and respondent argue, the payments to Charlotte were not fixed as child support, the payments are includable in Charlotte's income and deductible by Carl. [11] If, however, as Charlotte argues, the payments were so fixed, they are not income to Charlotte and not deductible by Carl. *50 The Supreme Court, in Commissioner v. Lester,366 U.S. 299 (1961), set forth the rules for determining whether a separation agreement or decree sufficiently fixes payments as child support. [12] In Lester, a case decided under a similarly worded predecessor to section 71(b), the Court considered a separation agreement providing for periodic payments to the wife that were to be reduced by one-sixth when each of the three children married, became emancipated, or died. Analyzing carefully the legislative history of the statute, the Court concluded that-- [t]he agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress. Commissioner v. Lester,supra at 303. *51 The Court refused to take into account the intent of the parties based on inferences to be drawn from the reduction clauses, and concluded that, when the agreement does not fix the payments as child support, speculation about actual intent is irrelevant under section 71. 366 U.S. at 305. See also Mass v. Commissioner,81 T.C. 112, 122-123 (1983). Likewise, extrinsic evidence of the actual use of the payments by their recipient, the later conduct of the parties, and the importance to the parties of the tax consequences under sections 71 and 215 is irrelevant to the Lester inquiry. Mass v. Commissioner,supra at 123; Gotthelf v. Commissioner,48 T.C. 690, 694 (1967), affd. 407 F.2d 491 (2d Cir. 1969); Grummer v. Commissioner,46 T.C. 674, 679 (1966). Since it is Charlotte who is contending that a part of the payments received from Carl during the taxable years 1979 *52 and 1980 meets the requirements of Lester with respect to child support, we will turn our attention to her arguments. Charlotte first examines the Agreement itself, and alleges that it is sufficiently different from the agreement in Lester to merit a finding that the payments under it were fixed. In citing Carl's ability under the Agreement to pay Charlotte's obligations and deduct these payments from the regular monthly payments, the lack of a "hold harmless" clause in the Agreement, and the generally more favorable provisions for the recipient spouse in Lester than under the Agreement, Charlotte appears to confuse the quality of the deal bargained for the Agreement with the issue of whether its terms "fix" a portion of the payments as child support. Under the Lester test, so long as the payments under the Agreement are made available to the recipient spouse for her personal needs (either by direct payment to her or by expenditure for her benefit) rather than earmarked specifically and exclusively for child support, the payments are not fixed as child support regardless of the actual use to which they are put. See 366 U.S. at 304. To be *53 sure, the Agreement obliges Charlotte to make certain payments and allows Carl to make deductions from his payments to her for any such payments made directly by him. However, the actual payments to which Charlotte was entitled under the Agreement each month during the years in issue do not appear to have been specifically restricted to use for child support. [13] Thus, as in Lester, the Agreement provides for unallocated sums, and does not meet the requirements of section 71(b). Next, Charlotte contends that because the terms of the 1978 amendment to the Agreement require her to pay the first $1,500 per child per year *54 of college expenses for three years, and allow Carl to pay these amounts and deduct them from his monthly payments, the amendment fixes $3,000 per year of Carl's payments as child support. While it is permissible to look to the amendment for provisions fixing amounts as child support, cf. Gotthelf v. Commissioner,supra at 693 (rider to the agreement), a clause in the Agreement varying the level of payments upon the occurrence of a contingency cannot fix payments previously not fixed until the contingency actually occurs. Brock v. Commissioner,566 F.2d 947, 948-949 (5th Cir. 1978), affg. a Memorandum Opinion of this Court; Abramo v. Commissioner,78 T.C. 154, 162 (1982); Patricof v. United States, an unreported case ( S.D.N.Y. 1975, 36 AFTR 2d 75-5411, 75-2 USTC par. 9596). In the instant case, it is clear from the record that neither Carl nor Charlotte made any college payments in the years in question; indeed, by the end of 1980, the children were only 16 and 14 years old. Thus, even if the amendment could be said to fix $3,000 per year of Carl's payments to cover Charlotte's college obligations *55 (and we seriously doubt that it could), no actual payments were made during 1979 and 1980 to make this fact relevant. Finally, Charlotte argues that the various court decrees fix Carl's payments as child support. These decrees raised the level of support payments to $1,000 per month as of July 1980 (Judge Fortkort's April 1980 order), a raised the payments to $1,600 per month as of August 1981 (Judge Brophy's July 1981 order), and reduced Carl's obligation to the residual college expenses under the 1978 amendment plus $437.50 per month (Judge Jamborsky's November 1981 order). A court decree can fix payments previously not fixed as child support. See Thomson v. Commissioner,42 T.C. 825, 833 (1964), affd. sub nom. Metcalf v. Commissioner,343 F.2d 66 (1st Cir. 1965). However, the tax consequences of support payments are determined by the instrument and decrees under which they were made; a decree issued after the years in question generally cannot affect the character of the payments in prior years. See Graham v. Commissioner,79 T.C. 415, 419-420 (1982), and cases discussed thereat; Engelhardt v. Commissioner,58 T.C. 641, 649 (1972). *56 Thus, only Judge Fortkort's order, changing the amounts for a portion of 1980, could possibly affect the character of the payments here in issue. [14] We hold, however, that it did not. Judge Fortkort specifically stated that Charlotte's petition sought "an increase in the support set forth in the parties' property Settlement Agreement of October 7, 1971 and subsequent amendment thereto," and found the "increase warranted." As this order, then, merely increased the payments under an agreement which, as noted above, did not fix payments as child support, Judge Fortkort's order did not change the character of any of the payments for the years in question. [15]
*57 Charlotte also contests the deficiency on the grounds that respondent failed to issue to her a statutory notice of deficiency within the statutory period.Section 6501 (a) and (b) gives respondent 3 years from the last day for filing returns for the years in issue to issue his deficiency notice. The last day, and the actual filing date, for Charlotte's 1979 tax return was April 15, 1980. Respondent issued a deficiency notice to Charlotte on December 23, 1982, well within the statutory period. Charlotte's authority on this issue deals with the suspension of the statute found in section 6503(b) (see United States v. McPhilamy, 16 Bankr. 160, 49 AFTR 2d 82-766, 82-1 USTC par. 9185 (W.D. Va. 1981); United States v. Copley,508 F. Supp. 110 (E.D. Mo. 1980)), the time for filing a petition in this Court (see Meldon v. Commissioner,225 F.2d 467 (3d Cir. 1955), affg. a Memorandum Opinion of this Court), and bankruptcy issues (see Matter of Bulk Transport, Inc., 23 Bankr. 538, 50 AFTR 2d 82-5722, 83-1 USTC par 9133 (Bankr. E.D. La. 1981)), none of which is relevant to the deficiency determination. [16]
*58 Thus, on the issue of deficiency, we hold that respondent correctly determined deficiencies of $2,916 and $2,752.44 against Charlotte based on her failure to include the full amounts of the payments in question made by Carl in her gross income for the years in issue. Carl's deficiency determinations, therefore, are incorrect, as he is entitled to deduct the full payments under section 215. Respondent also determined additions to Charlotte's tax under section 6653(a), which, for the years in issue, imposes a 5 percent addition in cases in which "any part of the underpayment * * * is due to negligence or intentional disregard or rules and regulations." We adhere to the view, which we expressed at the trial of the instant case, that there is enough confusion and complexity involved in the instant situation that the additions to tax should not be sustained. Decision will be entered for the petitioner in docket No. 3723-83.
Decision will entered under Rule 155 in docket No. 6329-83.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Rules of Practice and Procedure of this Court. ↩
2. The issue of deductibility of the payments by the payor is determined solely by our disposition of the sec. 71(a) issue. Sec. 215(a). Similarly, respondent's adjustment concerning unemployment compensation is automatic: if the payments are includable in income, the resulting increase in the recipient's adjusted gross income will increase the taxable portion of her unemployment compensation. See sec. 85.↩
3. In making our findings of fact, with one exception (see infra↩ note 8), we have not taken as stipulated in respect of Charlotte's liability those facts and documents contained in the one stipulation which she did not sign.
4. Barbara McIninch Love is a petitioner in this case solely by virtue of having filed jointly with Carl George Love for the years in question.↩
5. Charlotte testified, and has argued strenuously, that there was an agreement, which she signed, that has not been included in the record. She gave no details as to how the provisions of any such agreement differed from those which are part of the record herein insofar as concerns the payments to her which are at issue. The same issue appears to have been the subject of testimony in the matter before Commissioner West (see infra p. 9). As was the case with Commissioner West, whose findings formed the basis of Judge Jamborsky↩'s decree, we are satisfied that the agreements before this Court are the only ones which existed.
6. The following summarizes Carl's legal obligations under the Agreement, the amendment, and the court orders: ↩
1971 Agreement
-$925/mo. until realty sold,
$825/mo. thereafter
1978 Amendment
-$1,200/mo. for July 1978 -
June 1980, $875/mo. thereafter,
reduced to $437.50/mo.
if Charlotte moves 50 miles
from Dallas or the District of
Columbia
-college expenses over Charlotte's
obligation of $1,500/yr. for the
first three years for each child
April 1980 Order
(Fortkort, J.)
-$1,000/mo. from July 1980
July 1981 Order
(Brophy, J.)
-$1,600/mo. for August 1981-
April 1982, $1,000/mo. thereafter
November 1981
Order (Jamborsky,
-College expenses per 1978 amendment
J)
plus $437.50/mo.
7. Carl claims, respondent agrees, and Charlotte appears not to contest, that the February 1979 check made payable to the order of Court Realty was part of the $1,200 monthly payment, and was a direct payment for Charlotte's deposit on a rental house. ↩
8. One $1,200 check issued in April 1980 was not stipulated to by Charlotte. However, we have no reason to doubt its authenticity or the elements set forth in the copy of the check, which is in evidence, and Charlotte has offered no evidence to the contrary. ↩
9. Apparently, Charlotte included in her income $437.50 for each of the twelve months of 1979. There is no explanation for the 1980 figure.↩
10. As in effect for the years in issue, sec. 71(a) provides-- (1) Decree of divorce or separate maintenance.-If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written separation agreement.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. (3) Decree for support.--If a wife is separated from her husband, the wife's groiss income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. We note that the breadth of this provision renders Charlotte's argument as to the validity of the Dominican Republic divorce decree irrelevant. Whether or not there was ever a valid divorce, sec. 71 covers the Agreement, which expressly survives (i.e., is incorporated, but not merged, into) any subsequent divorce decree. See Engelhardt v. Commissioner,58 T.C. 641, 646↩ & n.6 (1972). 11. For the years is question, sec. 215(a) provides that "there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year."↩
12. Congress, in enacting substantial revisions to sec. 71 to become effective after, 1984, specifically noted that the Lester↩ rules were part of the current law. H. Rept. 98-432 (pt. 2) 1494 & n.8 (1984).
13. This fact distinguishes Sperling v. Commissioner,T.C. Memo. 1982-681, affd. 726 F.2d 948 (2d Cir. 1984), on which Charlotte relies. In Sperling,↩ not only did the payor spouse write checks directly to colleges for the children's education, but he was specifically obligated to pay these educational expenses. The alleged recipient spouse had no control over the funds whatsoever, and the Court did not accept the argument that any obligation on the part of the former wife was being discharged by the payments.
14. We note that Charlotte reads the November 1981 order out of its context in order to conclude that Judge Jamborsky meant to reduce the amount of alimony not fixed as child support to $437.50 per month. The "unallocated sum" mentioned in the order clearly refers to Carl's obligation to pay the residual college expenses. In any event, Judge Jamborsky↩'s order cannot be given retroactive effect. 15. Although, as Charlotte notes, the proceeding before Judge Fortkort was brought under VA. CODE sec. 16.1-241A(3) (1950), which grants jurisdiction over child support, custody, and visitation proceedings, we refuse to review the propriety of Judge Fortkort's clear decision to increase the entire payment. We are constrained to point out that Judge Fortkort's order appears to follow proper Virginia practice, viz., increasing the entire award in order not to disturb the payor spouse's tax treatment. Wickham v. Wickham,215 Va. 694, 213 S.E.2d 750 (1975); see Blakey v. Commissioner,78 T.C. 963, 978↩ (1982).
16. The only bankruptcy issue relevant to our determination is whether respondent violated the automatic stay provisions of 11 U.S.C. sec. 362(a) (Supp. III 1979). However, as there is no stay of the issuance of a tax deficiency notice by a governmental unit, 11 U.S.C. sec. 362(b)(8) (Supp. III 1979), respondent did not violate the Bankruptcy Codce. Charlotte's debts were discharged by the bankruptcy court on October 5, 1982, and the deficiency notice to her was not issued until December 23, 1982. Thus, by the time the petition herein was filed, any stay of proceedings in this Court had been lifted. 11 U.S.C. sec. 362(c)(2)(C). Charlotte's "fresh start" arguments were considered and rejected by Congress. Section 523(a)(1) of the Bankruptcy Code exempts from the debts dischargeable in bankruptcy income taxes for taxable years for which returns were due within three years before the filing of a petition in bankruptcy. See 11 U.S.C. secs. 523(a)(1)(A), 507(a)(6)(A) (Supp. III 1979); Bruning v. United States,376 U.S. 358, 361 (1964). Charlotte filed her bankruptcy petition on April 26, 1982--well within the three years from the time her 1979 returns were due. See Hammerer v. Internal Revenue Service, 18 Bankr. 524 (Bankr. E.D. Wis. 1982). To the extent Charlotte's argument actually concerns the six-month period for filing a proof of claim in the bankruptcy case, Bankruptcy Rule 302(e), we note that this question is not relevant to our determination. In a sense, this Court determines whether respondent is a creditor of the bankrupt, but we have no jurisdiction over issues of discharge and compliance with the requirements of collection in a bankruptcy proceeding. Cf. Graham v. Commissioner,75 T.C. 389, 399 (1980). It may be that respondent cannot collect on his claim in bankruptcy, see In re Pennetta, 19 Bankr. 794↩ (Bankr. D. Colo. 1982), but that is not our concern in this case.